# Louisville & Nashville Railroad Co. *v.* Johnson.

*Action against Railroad Company for Damages, by Administrator of Person Killed.*

1. *Ejecting person from railroad car; whether passenger or trespasser.*
A person who, having entered a railroad car as a passenger, persistently refuses to pay his fare, becoming boisterous, and using profane and obscene language, is to be regarded, not as a passenger, but as a trespasser, or intruder ; and it is the right and duty of the conductor to eject him, having due regard to the attendant circumstances of time, place, and his condition, and using no unnecessary force.

2. *Same; proximate cause of injury; drunkenness as contributory negligence.*—If the person ejected was intoxicated at the time, but not to such an excess as to render him unconscious, or unable to take care of himself; and he was put off about dark at a place within a mile of his house, a locality with which he was familiar, and where another train was due in half an hour, and two others passed during the night; and his dead body, badly mangled, was found near the spot, but on the opposite side of the track; on these facts, the railroad company is entitled to a general affirmative charge on the evidence.

APPEAL from the Circuit Court of Cullman.
Tried before the Hon. H. C. SPEAKE.

JONES & FALKNER, for appellant.—A conductor on a railroad train can put off a passenger, who has no ticket and refuses to pay his fare, using no more force than is necessary, and is not bound to put him off at a station.—*McClure v. P. W. & B. R. R. Co.*, 34 Md. 532 ; *Hoffbauer v. D. & N. R. R. Co.*, 52 Iowa 342 ; *Toledo W. & W. R. R. Co. v. Wright*, 68 Ind. 586 ; *Indianapolis &c., R. R. Co. v. Rinard*, 46 Ind. 293; *O'Brien v. Boston Railroad Co.*, 15 Gray 20 ; *Hibbard v. Erie R. R. Co.*, 15 N. Y. 455 ; *Grt. Wes. R. R. Co. v. Miller*,

[Louisville & Nashville Railroad Co. v. Johnson.]

19 Mich. 305; *Terre Haute R. R. Co. v. Vannata*, 21 Ill. 188; *Ohio R. R. Co. v. Muhling*, 30 Ill. 9; *Ill. &c. R. R. Co. v. Whitmore*, 43 Ill. 420; *Haley v. Chicago R. R. Co.*, 21 Iowa 15; *Columbus R. R. Co. v. Powell*, 40 Ind. 37; *Lillis v. St. Louis &c. R. R. Co.*, 64 Mo. 464. It is not only the right, but the duty of the conductor, to eject from his train a passenger guilty of riotous and disorderly conduct, and who uses profane or obscene language to the annoyance of other passengers.—*R. R. Co. v. Vallely*, 32 Ohio 345; *Peoble v. Caryl*, 3 Park. Cr. 326; *Putnam v. Broadway R. R. Co.*, 55 N. Y. 108; *Chicago R. R. Co. v. Griffin*, 68 Ill. 499; *New Orleans R. R. Co. v. Burke*, 53 Miss. 200; *West Chester R. R. Co. v. Miles*, 55 Pa. St. 209; *Pittsburg R. R. Co. v. Pillow*, 76 Pa. 510; *Halley v. Atlanta St. R. R. Co.*, 61 Ga. 215; *Vinto v. Middlesex*, 11 Allen 204; *Peasy v. Geo. R. R. Co.*, 81 Ga. 485; *L. & N. v. Logan*, 10 S. W. Rep. (Ky.) 655. Drunkenness is a self imposed disability, and the fact of intoxication will not relieve the injured person from the consequences of his contributory negligence. Beach on Contributory Negligence, § 146; 2 Amer. & Eng. Ency. of Law, p. 751.

W. T. L. Cofer, *contra*, cited *L. C. & L. R'w. Co. v. Sullivan*, 81 Ky. 624; 50 Amer. Rep. 186; *Isbel v. N. Y. &c. R. Co.*, 27 Conn. 393; *Kerwhaker v. Cleveland &c. R. R. Co.*, 3 Ohio St. 172; *Weymise v. Wolfe*, 52 Iowa 533; *S. L. I. M. & S. Ry. v. Wilkerson*, 46 Ark. 513; 19 Amer. & Eng. R. R. Cas. 11; *Louisville &c. R. R. Co. v. Sullivan*, 81 Ky. 624.

CLOPTON, J.—Appellee, as administratrix, sues to recover damages for the death of A. W. Johnson, alleged to have been caused by the culpable negligence of the employés of defendant. Plaintiff's intestate having taken passage on a train of defendant, and having wilfully and persistently refused to pay his fare when asked, becoming boisterous and using profane and very obscene language, clearly shown by the evidence, it became the duty of the conductor to protect defendants against such intrusion, and the passengers against insult and annoyance. The right of the conductor to put him off the train, under such circumstances, does not admit of serious question. By refusing to pay his fare when rightfully demanded, and by his gross misconduct, deceased forfeited all right to remain in the car, and assumed the position of an intruder. The conductor was not required to have consideration for his convenience, and was authorized to stop the train and put him off at any point on the railroad, having reasonable regard for his personal safety. The company owed him no duty other than

the duty it owes to any trespasser—not to inflict intentional, reckless or wanton injury. In exercising the right of expulsion, unnecessary force must not be used, nor must it be exercised at such time, place and under such circumstances that serious injury will probably and naturally result; for if it ensues, this is the equivalent of intentional, reckless or wanton injury. Subject to these limitations and restrictions, the time, place and circumstances are left in the discretion and judgment of the conductor.— *Wyman v. No. Pac. R. R. Co.*, 22 Am. & Eng. R. R. Cas. 402; *Atch. To. & S. Fe R. R. Co. v. Gants*, 34 Am. & Eng. R. R. Cas. 290; *Gr. Wes. Rwy Co. v. Miller*, 19 Mich. 305; *McClun v. Phil. & Balt. R. R. Co.*, 34 Md. 532; Hutchinson on Carriers, § 590; Rorer on Railroads, 960; *Mem. & Char. R. R. Co. v. Womack*, 84 Ala. 149; *L. & N. R. R. Co. v. Black*, 89 Ala. 313. No right of recovery is or can be claimed under the original complaint, which proceeds on the theory that plaintiff's intestate was a passenger. The amended complaint, by the statement that his fare was demanded and that he neglected or refused to pay it, impliedly conceded the consequent right to remove him from the train, and bases the liability of defendant on the averments, that the conductor put him off at a time and place, and under circumstances, seriously endangering his safety, and exposing him to imminent peril of life or limb from passing trains, and that he was run over and killed by one of defendant's trains.

The time was about six o'clock in the evening, dark and raining. The place at or near the entrance to a cut from two hundred to two hundred and fifty yards long, about one mile from Wilhite, a station which the train had just left; also from the home of the deceased. On the right is a mountain or high hill, and on the left, a creek about twelve feet below and thirty or more feet from the railroad, but sufficient space on each side of the road to enable a person to avoid injury by passing trains. Between the cut and Wilhite are a trestle and two stock gaps. Deceased was familiar with the locality and the cut. He was intoxicated, but not so drunk as to be unconscious or stupefied; had the use of his mental and physical faculties. There was nothing in his manner to indicate to the conductor that he could not or would not avoid the danger of a passing train. A train was due about thirty minutes thereafter, and two others passed during the night. His body was discovered the next morning on the opposite side of the track, a short distance from where he was put off, badly mangled. He was not injured while being ejected, or by the train from which he was removed, or by exposure to any perils incident or peculiar to the time or place, disconnected from the passing

of other trains. From the position and condition of his body, it may be assumed that he was run over and killed by another train, and this the amended complaint avers. Under its averments and on the evidence, the material inquiry is, whether putting him off at such time and place was the proximate cause of his death, or his own negligence or other intervening agency.

Drunkenness has been styled a self imposed disability, and men make themselves drunk at their peril. It does not excuse the omission to use the same care and prudence, which is exacted of a sober man under the same circumstances. "The fact of the intoxication of the injured person, at the time of the injury, will not only not relieve from the consequences of his contributory negligence, but, also, if his intoxicated state contributed to the happening of the injury, will be admissible in evidence as proof of contributory negligence." 2 Am. & Eng. Ency of Law, 751; *Co. & Wes. R'way Co. v. Wood*, 86 Ala. 164; Beach on Con. Neg., § 146. It appearing that plaintiff's intestate was not so drunk as to be unconscious of the peril attending the passing of trains, or unable to take care of himself, his drunkenness is not only not excusatory, but tends to show that he contributed to his own injury by placing himself in the position of imminent danger in which he was found. Had he even remained on the side of the road where he was left, he would not have been injured.

The degree of intoxication, as also the other facts and circumstances, plainly distinguish this case from the case of *Lo.; Cin. & Lex. R. R. Co. v. Sullivan*, 81 Ky. 624, which is cited and relied on by appellee's counsel. In that case, the weather was intensely cold, several degrees below zero, the ground covered with snow eight to ten inches deep, and the person put off stupidly drunk, unable to take care of himself or to travel. The probability was that he would remain wherever put, and the natural consequences that he would freeze, which, in fact, produced his injuries. Putting him off under such circumstances was considered gross negligence, and the proximate cause of his injuries. It is said in the opinion, that the force, if not unnecessary, was used "under circumstances and at a time when the consequences ordinarily would be as injurious as when, in an attempt to remove a trespasser from his dwelling-house, the owner should shove him from an upper story, or lead him into a pitfall or well, or when a person is pushed off a fast moving train,"—reckless or wanton.

*Railway Co. v. Balleley*, 32 Ohio St. 345; s. c. 30 Am. Rep. 601, is parallel. The party, who was drunk but not stupefied or unable to travel, was put off about eight or nine o'clock in

the evening, and was found the next morning about one-third of a mile from where he was put off in a dying condition, and died a few moments after he was taken up. Being found near the track badly bruised and mangled, it was assumed that he was run over and killed by another of the company's trains. Ashburn, J., said: "But if the propriety of the expulsion were doubtful, either because deceased's conduct did not justify it, or because his condition rendered it unsafe and dangerous in its consequences, still we must find that the death was the natural and proximate result of the expulsion before defendants can be made liable. How can this be said in the present case? Admit that the railroad track is dangerous to passers by; admit that putting off, as was done, was placing him in circumstances of danger; they were no more dangerous to him than they were to every man whose business or pleasure takes him in the neighborhood of railroads. There was no unusual or extraordinary circumstance of danger in the whole transaction, if the man was able to take care of himself, and this he was. The mere putting off, therefore, was in no way connected with his death, except as he himself connected it, by reason of his intoxication, and for this he alone is responsible. The expulsion is not in any way the occasion of the catastrophe, either as a proximate or other cause, unless it is in some way attached or linked with the drunkenness. If this is the state of the case, he must have been so drunk at the time he was struck as to be unable to avoid the accident, which shows the intoxication to have been the proximate cause; and whether it be the proximate cause, or a cause for which alone he is responsible, in either case, the responsibility can not be fastened upon defendant." These cases, above referred to, draw the distinction as to the circumstances under which putting an intoxicated person off the train, and when his drunkenness, will be considered the proximate cause of his injury.

Plaintiff's intestate being boisterous and unruly, using profane and vulgar language, making himself obnoxious to the other passengers, it was the duty of the conductor not to hesitate, but act promptly, using due discretion and judgment. Not being unconscious or in a stupor, and being familiar with the cut and road, he was bound to know that other trains were expected, and that it would be dangerous to be or remain on the track. If the danger to which he was exposed consisted in his going upon the track, no place could have been found on the side of the road where he would not be exposed to the same danger. Left where passing trains would not injure him, without some intervening agency, if he aftewards wandered on the track and placed himself in a position of peril, it was his

[Montgomery & Eufaula Railway Co. v. Mallette.]

own carelessness, resulting from his unfortunate condition, for which defendants are not responsible. His expulsion from the train can not, under the evidence, be regarded as the natural and proximate cause of his death, or as connected with it, except as he himself connected it by his voluntary intoxication. *McClelland v. Lo. N., A. & Chic. Railway Co.*, 94 Ind. 276; 18 Am. & Eng. R. R. Cas. 260.

The court should have given the affirmative charge requested by defendant.

Reversed and remanded.