[Johnson v. Louisville & Nashville Railroad Co.]

# Johnson v. Louisville & Nashville Railroad Co.

| 104 | 241 |
| 108 | 64 |

| 104 | 241 |
| 136 | 180 |
| 136 | 181 |

*Action against Railroad Company for Damages, by Administrator of Person killed.*

1. *Plea of contributory negligence; should aver facts.*—In an action against a railroad company for the negligent killing of plaintiff's intestate while an employé of the defendant, a plea "that the injuries to plaintiff's intestate now complained of, if any he received, would not have occurred but for his faults and negligence, and that his faults and negligence contributed proximately and directly to produce the injuries," is insufficient, and is demurrable, for failing to set forth the facts relied upon as constituting contributory negligence.

2. *Ejecting person from railroad car; whether passenger or trespasser.* A person, who, having entered a railroad car as a passenger, persistently refuses to pay his fare, and becomes boisterous and uses profane and obscene language, is to be regarded, not as a passenger, but a trespasser; and it is the right and duty of the conductor to eject such person from the car, having due regard to the attendant circumstances of time, place and condition of the person ejected, and using no unnecssary force.

3. *Same; duty of conductor.*—Where a person enters a railroad car in an intoxicated condition, and upon his refusal to pay his fare, and becoming boisterous and profane, the conductor ejects him from the train, it is a question for the jury, to be determined from the evidence, whether, in the exercise of his right, the conductor had regard to the preservation of life and prevention of great bodily harm, or the infliction of unnecessary injury to such person; the railroad company being responsible for the manner in which he exercised the right of ejection.

4. *Drunkenness; does not exempt person from responsibility.*—Drunkenness does not exempt a person from the responsibility of his own acts; and if the intoxication renders him reckless or indifferent to consequences, and he fails to exercise due care, such failure will not be excused because superinduced by his intoxication; the law exacting from one voluntarily intoxicated the same care and precaution to avoid injury, as it does from a sober person of ordinary prudence under like circumstances.

5. *Same; liability for damages done to one who is drunk to unconsciousness.*—Where one who is so intoxicated that he does not possess the power of locomotion and is unconscious of danger, and can not

[Johnson v. Louisville & Nashville Railroad Co.]

appreciate his position and surroundings, nor his duty to avoid passing trains, and these facts are known to the conductor on a railroad
train, who puts such person off of his train at a place which is dangerous to one in his condition, the conductor is guilty of such negligence
as will render the railroad company liable for damages resulting from
such ejection, although the person ejected may have been a trespasser
on the train, and legally liable to ejectment in a proper manner and
in a proper place.

6. *Evidence; illegal expert testimony.*—In an action against a
railroad company by an administrator to recover damages for the
alleged negligent killing of plaintiff's intestate, who is shown to have
been drunk when ejected from one of defendant's trains, it is not
permissible to ask a physician the following question: "Will you
please tell the effect of alcoholic drunkenness upon a person or individual?"

7. *Same.*—In such a case, a witness who testified that he occupied
a seat in one end of the car, while the deceased sat on a different side
in the other end of the same car, but that he could not hear anything
that deceased was saying, is incompetent to testify whether the deceased was in a "senseless condition," or whether he was "stupidly
drunk."

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. H. C. SPEAKE.

This was an action brought by the appellant, as the
administratrix of the estate of A. W. Johnson, deceased,
against the Louisville & Nashville Railroad Company
and the South & North Alabama Railroad Company;
and sought to recover damages for the alleged negligent
killing of the plaintiff's intestate. The defendants pleaded
the general issue, and also the following special plea:
"2d. That the injuries to plaintiff's intestate now complained of, if any he received, would not have occurred
but for his faults or negligence, and that his faults and
negligence contributed proximately and directly to produce said injuries, and said injuries were not the result
of any wanton, reckless or intentional act done by these
defendants, their agents or servants."

The plaintiff demurred to this plea, on the ground
that it does not state the facts relied upon, as constitu-.
ting the alleged negligence of the plaintiff's intestate.
This demurrer was overruled, and the plaintiff duly excepted.

The evidence, as shown by the bill of exceptions,
tended to show that the plaintiff's intestate was a passenger on one of the defendants' trains, having pur-

[Johnson v. Louisville & Nashville Railroad Co.]

chased a ticket from Cullman, Alabama, to Wilhite, Alabama, stations along the line of the defendants' road; that when the plaintiff's intestate boarded the train he was drinking, and took several drinks after he was on the defendants' train ; that he was very boisterous and noisy, and used profane, vulgar and obscene language on the train in the presence of other passengers ; upon the arrival of the train at Wilhite the plaintiff's intestate did not get off of the train, but informed the conductor that he expected to go on further, to another station ; that upon the conductor's demanding his fare from Wilhite to the other station the plaintiff's intestate refused to pay his fare, and became very profane and boisterous. The conductor told the plaintiff's intestate that if he did not pay his fare he would have to put him off the train, and being unable to get the fare, and the plaintiff's intestate continuing to use profane and vulgar language, the conductor stopped the train and put the plaintiff's intestate off in a cut along the line of defendants' road. After he was put off of the train, the plaintiff's intestate was found dead upon the track some time during the same night.

Upon the examination of Dr. J. E. Purdon, as a witness for the plaintiff, he testified that he had been engaged in the practice of medicine twenty-eight or twenty-nine years. Thereupon the plaintiff asked the witness the following question : "Will you please tell us the effect of alcoholic drunkenness upon a person or individual?" The defendants objected to this question on the ground that the subject is not one for expert testimony, which objection the court sustained, and the plaintiff duly excepted. The plaintiff then asked the witness the following question : "State what effect alcohol has upon the human system, with reference to stupifying or deadening the intellectual or physical faculties or judgment?" The defendant objected to this question on the ground of its being incompetent and irrelevant evidence. The court sustained the objection, and the plaintiff excepted. The plaintiff then asked the witness the following several questions : "1st. State what effect alcohol has upon the judgment or locomotion of individuals?" "2d. Define alcoholic drunkenness?" "3d. State whether a man who is very drunk is conscious or unconscious?" "4th. State what

effect it would have upon a man in a drunken condition, or very drunk, to take him out of a heated car and expose him to a cold rain?" "5th. What would be the natural consequence of putting a drunken man out of a heated car into the darkness and rain?" To each of these several questions the defendants separately excepted, and the court sustained each separate objection of the defendants, and the plaintiff separately excepted to each of these rulings of the court.

The other facts, which have reference to the rulings of the trial court reviewed on this appeal, are sufficiently stated in the opinion.

Upon the introduction of all the evidence the court, at the request of the defendants, gave the general affirmative charge in their behalf, and to the giving of this charge the plaintiff duly excepted.

There was judgment for the defendants, and the plaintiff appeals, and assigns as error the rulings of the trial court to which exceptions were reserved.

L. C. DICKEY and W. T. L. COFER, for appellant.— The court erred in giving the general affirmative charge for the defendant.—L., Cin. & Lex. R. R. Co. v. Sullivan, 81 Ky. 624; s. c. 50 Amer. Rep. 186; Morris v. Hall, 41 Ala. 510, and cases cited; Phil., Wil. & Bal. R. R. Co. v. Larkin, 28 Amer. Rep. 442; C. & W. R. Co. v. Woods, 86 Ala. 164; S. & N. R. R. Co. v. Sullivan, 59 Ala. 272; 2 Amer. & Eng. Encyc. of Law, 751; 3 Brick. Dig. 114, § 118; Breen v. Tex. Pac. R. R. Co., 50 Tex. 43; Morris v. C. B. & Q. R. R. Co., 45 Iowa 29; Addison on Torts, 495; Kerwhacker v. Cleveland &c. R. R. Co., 3 Ohio St. 172; Isbell v. N. Y. &c. R. R. Co., 27 Conn. 393; Johnson v. C. R. & I. & Pac. R. R. Co., 58 Iowa 348; Kline v. C. P. R. R. Co., 37 Cal. 400.

J. M. FALKNER, contra, cited L. & N. R. R. Co. v. Johnson, 92 Ala. 204.

COLEMAN, J.—The plaintiff as administratrix, sued to recover damages for the killing of intestate, alleged to have been caused by the wrongful negligence of the defendant. The defendant pleaded the general issue, and as a second plea the contributory negligence of the deceased. The plea of contributory negligence was de-

fective in the respect pointed out in the demurrer. It was too general, and the court erred in overruling a demurrer to this plea.—*Tenn. Coal, Iron & R. R. Co. v. Herndon*, 100 Ala. 451. We can not presume that if the facts relied upon to sustain this plea had been stated, that plaintiff would not have met them with rebutting testimony. It was the plaintiff's right to know the facts, and to have an opportunity to meet them.

So far as the evidence bears upon the question of the right of the conductor to eject the deceased from the car it is substantially the same as when the case was here on a former appeal.—*L. & N. R. R. Co. v. Johnson*, 92 Ala. 204. The conduct of the deceased was reprehensible, his language obscene and insulting, and his refusal to pay his fare, justified the conductor in ejecting him from the car. We feel safe in stating that under the evidence, the death of the deceased was not caused by the car from which he was ejected, nor by any act of violence on the part of the conductor in putting him off. The evidence shows that a freight car running on schedule was following the passenger car, about thirty minutes late, both going north, and that a passenger train was due coming south, several hours late, and a passenger going north was due forty minutes after the south passenger had passed the place where the body of deceased was found. It was not known certainly that any person had been killed, until discovered by this last passenger train going north, about 2.25 a. m. The evidence shows that deceased was put off at night, that it was very dark, and that he was put off in a cut, and that it might have been two hundred yards, either north or south, to the end of the cut. The deceased was familiar with the cut and condition of the adjacent lands, having lived near by for several years. There was room in the cut, by standing near the walls, for trains to pass, and there were places along the cut where a person could get out from the track. There is no evidence tending to show that the officers or employés of the defendant, operating the freight train which followed the train from which deceased was ejected, or the subsequent passenger trains, had any notice or knowledge of the peril of deceased. Negligence can not be imputed to them. If there were no other facts in this case we would declare as matter of law that plaintiff could not recover.

It is contended for plaintiff, that because of deceased's drunken condition, the conductor who ejected him was not justified in putting him off and leaving him at the time and place where he was put off and left. Under the facts in the present record, that is the only issue in the case. What is the rule of law in such cases? Drunkenness does not exempt a person from the responsibility of contributory negligence. If intoxication renders a person reckless or indifferent to consequences or inadvertent, or thoughtless, and he fails to exercise due care, his failure or omission will not be excused, because superinduced by his intoxication. The law exacts from one voluntarily intoxicated, the same care and precaution to avoid injury as it would from a sober person of ordinary prudence under like circumstances.—*Columbus & Western Railway Co. v. Wood*, 86 Ala. 164; 4 Amer. & Eng. Encyc. of Law, p. 78; *L. & N. R. R. Co. v. Johnson*, 92 Ala. 204.

There is another principle of law to be observed which requires of all persons, in the exercise of a right, or the performance of duty, that it be done with reasonable regard to the preservation of life and prevention of great bodily harm or the infliction of unnecessary injury to others, and they will be held responsible for the manner in which the right is exercised or duty performed. It is an exceptional case, where the law does not subordinate personal rights to the preservation of life. A conductor has the right, under proper circumstances to eject a passenger from a car, but he would not be justified in exercising this right, while the car was at a high rate of speed, or when upon a high trestle, nor would he be justified in putting off a person who was blind and deaf, knowing his infirmity, except at a safe place. Upon like principles the law would not justify a conductor in putting off a passenger at a time and place and under conditions and circumstances which would expose him unnecessarily to great peril of life or bodily harm, and this, too, whether the danger arose from the natural infirmity of the person or was self-imposed. If the conductor did not know of the infirmity of the person, and the peril attending the ejection, there would be no liability arising from the exercise of the right and performance of the duty. It is the fact of notice or knowledge of the danger on the part of the conductor

under such circumstances that constitutes the act culpable or willful wrong. If the deceased was intoxicated to the degree that he was unconscious of danger, could not grasp his position and surroundings, and his duty to avoid danger from passing trains, or did not possess the power of locomotion, and the place where he was put off and left, was dangerous to one in his condition, and these facts were known to the conductor, the conductor would be guilty of such negligence as to render the defendant liable for damages, resulting from such misconduct, although the deceased may have been a trespasser on the train, and might have been legally ejected in a proper manner and at a proper place. Mere intoxication which did not take away consciousness, and the power to consider and understand the danger to which he was exposed, nor deprive him of physical capacity to take care of himself, and to avoid danger, would not relieve him from the responsibility of exercising due care, after he was put off the train, and if he was killed in consequence of such neglect of duty on his part, the plaintiff can not recover. The killing under these circumstances would be the result of his own negligence which proximately contributed to it. There is some evidence tending to show that deceased had whiskey with him on the train. If after being put off the train, either from the effects of liquor drank before or after his eviction, he became unconscious and unable to realize his condition and his duty, but was not so at the time of his eviction by the conductor, the defendant would not be liable, for the result of such subsequent intoxication. It would be a case of self-imposed intoxication, not known to the employés of the defendant, and which imposed no duty upon them. The facts are to be ascertained by the jury.

The court did not err in sustaining the objections to the question propounded to Dr. Purdon, as an expert.

The liability of the defendant is to be determined by the facts of the case, as they were, and appeared to be, to the conductor, in the exercise of reasonable prudence and care as to the condition of deceased at the time he was put off the train. There was no error in sustaining objection to the question to the witness Orr. This witness was asked if deceased was in "a senseless condition,"whether he"was stupidly drunk." This witness had testified, that he saw deceased in conversation with

[Foster & Rudder v. Smith.]

others but could not hear anything that was said, and that he had no conversation with deceased; that he, witness, occupied a seat in one end of the car, and the deceased on a different side, in the other end. The facts show he was not competent to answer the questions, independent of the form of the question.

Reversed and remanded.