# L. & N. R. R. Co. v. Johnson Admx.

*Action by Administratrix for Negligently Causing death of her Intestate.*

1. *Contributory negligence; drunkenness as excuse.*—Mere drunkenness which does not take away consciousness, and the power to consider and understand the danger to which one is exposed, nor deprives, him of physical capacity to take care of himself, and to avoid danger, does not relieve him from the responsibility of exercising due care to escape the danger, and if killed in consequence of such neglect of duty on his part, there can be no recovery on account of the injury.

2. *Ejecting passenger from railroad car; right and duty of conductor.* A conductor on a railroad, has a right to eject a passenger, who is drunk, abusive and obscene in his language, and who refuses to pay his fare, but it is required that in exercising this right, it shall not be done at a time and place, and under such conditions and circumstances as would unnecessarily expose the person ejected to great peril of life or bodily harm, whether the attendant danger arose from natural infirmity of the person, or was self imposed.

3. *Same; same.*—If a conductor ejecting a party from his car, did not know, or was not informed of the infirmity of the person and the peril attending his ejection, there would be no liability arising from the exercise of the right.

4. *Same; ejecting drunken person.*—If a passenger on a train is intoxicated to a degree to render him unconscious of danger—unable to take in his position, surroundings and perils, and his duty to avoid them, or he does not possess the power of locomotion, and is put off the train by a conductor on account of his misconduct, and the place where he is put off and left is dangerous to one in his condition, and these facts are known to the conductor, he would be guilty of reckless and wanton negligence, rendering the company in whose employment he is liable for damages resulting from his negligence, although the person ejected and injured might legally have been ejected at a proper place.

APPEAL from Cullman Circuit Court.

Tried before Hon. H. C. SPEAK.

The facts upon which the opinion in this case are based, are sufficiently stated in the opinion. The defendant requested the court to give the following written charges, and excepted to its refusal to do so. (1.) The

[L. & N. R. R. Co. v. Johnson, Admx.]

court charges the jury that if they believe the evidence in this case, they must find for the defendant. (2.) If the jury believe from the evidence, that at the place where deceased was put off the train, there was room for persons to have passed along the side of the railroad track without being struck by a train, or to have set down, or to have lain down without being in danger of a passing train, and if the jury believe from the evidence that there was a watchman in the cut near where the deceased was put off, then the putting deceased off the train under the circumstances as shown by the evidence in this case, is not such an act of gross recklessness, willfullness or wantonness as authorizes the plaintiff to recover, and the jury must find for the defendant. (3.) The court charges the jury that if they believe from the evidence that deceased was voluntarily intoxicated, then the law exacts from him the same care and precautions to avoid injury as would be exacted from a sober person of ordinary prudence under like circumstances. (4.) The court charges the jury that if they believe from the evi-that the putting a passenger off the train at the place and under the circumstances under which deceased was put off would not ordinarely result in the passengers death, then they must find for the defendant. (5.) The court charges the jury that if deceased contributed to his injury proximately, then the plaintiff cannot recover. (6.) The court charges the jury that the defendant was not bound in this cause to act as guardian of the deceased after he was put off the train, and if he came to his death from any act of negligence on his part or the failure to exercise due care and prudence in his movements, then their verdict must be for the defendant. (7.) If the jury believe from the evidence that the drunkenness of plaintiff's intestate was the proximate cause of his injury and death, they must find for the defendants. (8.) The court charges the jury that the expulsion of deceased from the train can not, under the evidence, be regarded as the natural and proximate cause of his death, or as connected with it, except as he himself connected it by his voluntary intoxication. (9.) The court charges the jury that if they believe from the evidence that said Johnson was left or put off where passing trains would not injure him, without intervening agency, and if they further believe from the evidence that he afterwards

wandered on the track and placed himself in a position of peril or danger, then it was his own carelessness, resulting from his unfortunate condition which caused his death, and for which the defendants are not responsible, and their verdict must be for the defendants. (10.) If the jury believe from the evidence that the deceased was not helplessly drunk when he was put off the train, and that on the west side of the track where the body was found it was thirty or forty feet to the creek, and that the creek was about ten feet lower than the track, though it might have been rocky and rough, the court charges the jury that there was sufficient room for him to have gotten out of the way of a passing train; and if they find that he was killed by failing to get out of the way of such trains, then that he contributed proximately to his own injury, and the verdict of the jury must be for the defendants. (11.) If the jury believe from the evidence that at the time deceased was put off of defendant's train, he was not helpless and the conductor had no reason to believe he was, and if the jury find from the evidence that the conductor used no more force than was necessary in putting him off the train, then the putting him off the train was not the proximate cause of his death, and the jury must find their verdict for the defendant.

There was a judgment for the plaintiff, and defendant appealed, assigning errors as noted in the opinion.

THOS. G. JONES, for appellant. (brief withdrawn.)

COFER & BROWN and L. C. DICKY, *contra.* (No brief in record.)

HARALSON, J.—This is the third appeal in this case. On the former—(92 Ala. 204; 104 Ala. 241) and especially in the latter—the law as applicable to the facts of the case was fully settled. In that decision, the following propositions were announced: 1. That mere drunkenness which does not take away consciousness and the power to consider and understand the danger to which one is exposed, nor deprives him of physical capacity to take care of himself and to avoid danger, does not relieve him from the responsibility of exercising due care to escape the danger, and if killed in consequence of such

neglect of duty on his part, there can be no recovery on account of the injury. 2. That a conductor on a railroad, under proper circumstances, such, as it may be admitted, existed in this case, has the right to eject a passenger from a car, but it requires that in exercising this right, it shall not be done at a time and place, and under such conditions and circumstances, as would unnecessarily expose the person ejected to great peril of life or bodily harm; whether the attendant danger arose from natural infirmity of the person or was self-imposed. 3. That if a conductor so ejecting a party from his car, did not know or was not informed of the infirmity of the person and the peril attending his ejection, there would be no liability arising from the exercise of the right. 4. That if a passenger on a train, is intoxicated to a degree to render him unconscious of danger—unable to take in his position, surroundings and perils, and his duty to avoid them, or he does not possess the power of locomotion, and is put off the train by a conductor on account of his misconduct, and the place where he is put off and left is dangerous to one in his condition, and these facts are known to the conductor, he would be guilty of reckless and wanton negligence, rendering the company in whose employment he is, liable for damages resulting from his negligence, although the person ejected and injured might have been legally ejected in a proper manner and at a proper place.—*Tanner v. Railroad*, 60 Ala. 621; *Isbell v. The N. Y. R. Co.*, 27 Conn. 393; *Kerwhacker v. R. R. Company*, 3 Ohio St. 172; *L. C. & L. R. Co. v. Sullivan*, 81 Ky. 186; *Johnson v. R. R. Company*, 58 Iowa, 348; *Kline v. C. P. R. Co.*, 37 Cal. 400; 3 Wood on Railroads, §§ 363-4; Sher. & R. on Neg., § 493; 1 Am. & Eng. Enc. of Law, 748.

The counsel for appellant in a lengthy and elaborate review of the main question at issue—the drunkenness of deceased and the consequences following—invites a reconsideration of some of our conclusions as announced on the last appeal. His contention, is, that to make the defendants liable, deceased must have been drunk to a degree to render him unconscious of attending perils, at the time and place he was ejected; that the conductor must have known of his condition; that, as a matter of law, under the evidence, the court below should have held, that deceased's intoxication was self-imposed, was

not to a degree to render him unconscious; that whatever its degree may have been, the conductor was ignorant of his true condition and acted in ejecting him, in the discharge of a right and duty; that there was nothing in the time, place and circumstances of the ejection, to show wanton or reckless negligence on his part, and that deceased was guilty of culpable negligence, which contributed proximately to his own death, for which defendants were not liable. But, we remain satisfied with the principles of law as before declared, and find no reason for departing from them. It is opposed to authority and reason and the common instincts of humanity to allow, because a passenger is intoxicated, whether to a greater or less degree, and misbehaves in a manner authorizing the conductor to expel him from the train, that such expulsion may be made without the exercise of due care for the safety of the passenger, having reference to time, place and surroundings. If expelled without the exercise of such reasonable care for his life and limb, and he is injured in consequence, the company will be liable notwithstanding the fact, if the passenger had not been drunk, he would not have misbehaved, and if he had not misbehaved, he would not have been expelled and injured. The right to make reparation rests upon the moral obligation resting upon every one, so to exercise his own rights as not to injure another. As was well expressed in *Isbell v. Railroad Co.*, *supra*, "A remote fault in one party does not of course dispense with care in the other. It may even make it more necessary and important, if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated. Common justice and common humanity, to say nothing of law, demands this; and it is no answer for the neglect of it, to say that the complainant was first in the wrong, since inattention and accidents, are to a greater or less extent incidental to human affairs. Preventive remedies must therefore always be proportioned to the case in its peculiar circumstances, to the imminency of the danger, the evil to be avoided, and the means at hand for avoiding it." If, therefore, the case, as decided in 92 Ala., contains expressions or lays down principles, as is contended by appellant, contrary to our later utterances on the subject, (104 Ala. 241) to which we adhere, it must be modified conformably to what we here hold; and, if

decisions may be found to the contrary, we decline to follow them. The evidence clearly shows, that the deceased was very drunk when he boarded the train and when ejected from it. It admits of much doubt if he had any intelligent understanding or comprehension of his situation, perils and duties, whether he knew where he was, or whither he wandered. It was in the night time, and very dark and rainy. The place was at Speakler's Cut, which was a reverse curve in the road, in the shape, as described by a witness of the letter S. The evidence tends to show that deceased was put off about midway of the cut, and on the eastern side of it; that the wall was high and preciptous, and on the western side, it was rough, rocky and sloping down to a creek, which was swollen from the recent and falling rain; that deceased's only escape was down or up the track; and at the point where he was killed, his only escape was to walk the track; on the south end of the cut, there were cattle guards, on the north, a bridge over a creek, about twenty-five feet wide; and over the one or the other of these, whichever way the deceased took, he was compelled to go, to get out. It further tends to show, that the track where the body was found, was ballasted with limestone and sandstone mixed, and was rough; that through the cut, there was space on the sides of the track, wide enough for a person to walk, and that deceased lived not very distant, and was well acquainted with the cut. It must be admitted, that it was a terrible place to put a passenger off, in the night time, whether drunk or sober. To the deceased, in the drunken condition he was, if he had any consciousness, it must have appeared a very hell.

The conductor testified, that the deceased acted like he had been drinking, but he did not know the fact. He refused, in a very non-sensical way, to pay his fare, and used rude, obscene language to the conductor,—at which the latter says he did not become offended,—such, as no one but a crazy or drunken man would employ. Such language and conduct evidenced a want of rationality. All this tends to show, that the conductor knew deceased's condition; and that he knew when, and where he put him off, and the horrors and perils of the situation, cannot be disputed. The fact too, that deceased was run over and killed by an approching train, in a very short

[King *et al.* v. Brown.]

time after his ejection from the train, tends to show how drunk and irresponsible he was. Whether the place was a proper one at which to eject him, having reasonable regard to the safety of his life and limb; how drunk he really was, and whether the conductor knew of his condition, we held before, were questions to be ascertained by the jury, and as to the correctness of this ruling, there can be no question.

We notice only those errors assigned, which have been insisted on in argument. There was no error in allowing plaintiff's witness, Smith, to answer the questions as to how the track was ballasted at the point where deceased was killed, and its character as to roughness; and if the field, near by, was overflowed with water, and how deep, the morning after the accident. These questions related to the character and condition of the place where the deceased was killed. The state of the weather, as well as the kind of night and place he was put off, were facts relevant and proper to be considered by the jury, in determining the question of the negligence of the conductor and its character.

The appellant requested eleven written charges, each of which was refused by the court. Some of them, it may be, assert correct, abstract principles of law; but, as applicable to the facts of this case, the charges are either incorrect in principle, are abstract, or ignore important facts in evidence, or are calculated to mislead the jury, and were properly refused. Some of them, improperly require the court to pass upon the facts of the case, and to withdraw them from the consideration of the jury. From what we have said, the vice of each, without taking the time and labor to discuss them sepparately, will be apparent.

Affirmed.