PARIS & GREAT NORTHERN RAILWAY COMPANY v. ANNA ROBINSON ET AL.

Decided December 3-17, 1908.

**1.—Carriers of Passengers—Care Due Intoxicated Person.**

In case of an intoxicated passenger killed by jumping or falling from the train while in motion, he being able to walk, though staggering, and with sufficient intelligence to go to the depot in time to take his train and to give to a companion accompanying him the correct fare with which to purchase his ticket, and apparently being looked after by his less intoxicated companion, the evidence is held insufficient to show negligence on the part of the carrier in receiving him as a passenger in such condition and failing to care for and protect him from danger by his own acts.

**2.—Same.**

Intoxication is of various degrees, and whether such as to require of a carrier, in the exercise of the high degree of care required, the use of other means to provide for the safety of a passenger than in the case of a sober one depends on his apparent condition, whether alone or accompanied by persons capable of looking after him, and knowledge by the carrier's servants of his placing himself in a position of danger.

**3.—Same—Refusing to Receive Passenger.**

The fact that a man was drunk and staggering does not justify refusal by a railway to receive him as a passenger, especially in view of the statute (Rev. Stats., arts. 4494, 4496) requiring such carriers to receive and transport all persons offering themselves as passengers.

**4.—Absence of Evidence—Res Ipsa Loquitur.**

There could be no recovery for the death of an intoxicated passenger by falling or jumping from the train where the evidence failed to disclose how the accident occurred or knowledge by the carrier's servants of his being in a place of danger. The maxim *res ipsa loquitur* applies only where the thing causing the accident is under the control of the defendant.

**5.—Reversal—Remand or Rendition.**

A recovery by plaintiff having been reversed and judgment rendered for defendant because of the insufficiency of the evidence to support the verdict, the Appellate Court, on showing made by affidavits in support of a motion for

rehearing that other evidence to sustain a recovery, is obtainable, will reverse and remand instead of rendering judgment.

Appeal from the District Court of Lamar County. Tried below before Hon. T. D. Montrose.

*Edgar Wright, C. H. Yoakum* and *W. F. Evans,* for appellant.— There was no evidence that at the time Robinson was received as a passenger, or at any time afterwards, he was intoxicated to such an extent as to render him incapable of caring for and taking care of himself. Missouri Pac. Ry. Co. v. Evans, 71 Texas, 361; Thixtons Ex'r v. Illinois Cent. R. Co., 96 S. W., 548; Louisville & N. R. Co. v. Logan, 10 S. W., 655; Galveston, H. & S. A. Ry. v. Long, 13 Texas Civ. App., 664; Price v. St. L., I. M. & S. Ry., 88 S. W., 575; St. Louis, A. & T. H. R. Co. v. Carr, 47 Ill. App., 353; Fisher v. West Va. & Pittsburg R. Co., 39 W. Va., 366; Roseman v. Carolina Central R. Co., 112 N. C., 709.

There is no evidence that the defendant, its agents or employes, at the time Robinson was received as a passenger, or at any time afterwards prior to his death, knew that he was in such a state of intoxication as to be incapable of caring for himself. Illinois Cent. R. Co. v. Cruse, 96 S. W., 821; 1 Elliott on Railroads, sec. 302; 1 Wood on Railroads, sec. 164; Korn v. Chesapeake & O. R. Co., 62 C. C. A., 417; Texas & P. Ry. Co. v. Overall, 82 Texas, 248.

The court's charge does not present the law as applicable to the undisputed facts in this case, in that, even if Robinson was so intoxicated as to be helpless and incapable of caring for himself, the undisputed facts showed that Robinson, when on defendant's train, was accompanied by a friend and companion, who was apparently in charge of him, and the conductor had a right to rely on his companion's taking care of him and did not owe Robinson any greater care than he did to any other passenger. St. Louis, I. M. & S. Ry. Co. v. Rexroad, 26 S. W., 1037.

The requested instructions affirmatively presented to the jury the facts establishing the defendant's defense of contributory negligence, and presented the same to the jury with the law applicable thereto, and same was not so presented by the court in its main charge. St. Louis & S. W. Ry. Co. v. Hall, 85 S. W., 789; Missouri, K. & T. Ry. v. McGlamory, 89 Texas, 635; Texas Trunk Ry. Co. v. Ayres, 83 Texas, 268; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 152; Fisher v. Railway Co., 23 L. R. A., 758; Railway Co. v. Ferguson, 79 Va., 241; Houston & T. C. Ry. Co. v. Bryant, 72 S. W., 888.

A carrier is not bound to protect a drunken man from the consequences of his own folly or wrong. C., I., St. L. & C. R. Co. v. Cooper, 6 L. R. A., 245; Weltey v. I. & V. R. Co., 105 Ind., 55; McClelland v. L. W. A. & C. R. Co., 94 Ind., 276; L., C. & L. R. Co. v. Sullivan, 81 Ky., 624; 5 Am. & Eng. Ency. of Law, 678; Houston & T. C. Ry. Co. v. Bryant, 72 S. W., 888; Sickles v. M., K. & T. Ry. Co., 13 Texas Civ. App., 434.

To a passenger incapable of caring for himself, who is accompanied by an attendant or companion, the carrier is only required to exer-

cise, for his safety, the same degree of care it is required to exercise for the safety of its other passengers. St. Louis, I. M. & S. Ry. Co. v. Rexroad, 26 S. W., 1037; Louisville & N. R. Co. v. Jordan, 66 S. W., 27; Illinois Central R. Co. v. Allen, 89 S. W., 150; 5 Am. & Eng. Ency. of Law, p. 538.

Even if Robinson was intoxicated to such an extent as to be helpless, the only duty owed him by the carrier was to place him in a safe position within the car and it was not required to guard said Robinson until he landed safely at his destination. Thixton v. Illinois Cent. R. Co., 96 S. W., 548; St. Louis, A. & T. H. R. R. Co. v. Carr, 47 Ill. App., 353.

There was no evidence showing that defendant was liable for Robinson's death and the court should have instructed a verdict for the defendant. San Antonio & A. P. Ry. Co. v. Robinson, 73 Texas, 277; Texas & N. O. Ry. Co. v. Crowder, 63 Texas, 505; Texas & P. Ry. Co. v. Shoemaker, 84 S. W., 1052; Railway Co. v. Evans, 71 Texas, 371; Thixton v. Illinois Cent. Ry. Co., 96 S. W., 548; Galveston, H. & S. A. Ry. Co. v. Long, 13 Texas Civ. App., 664; Korn v. C. & O. Ry. Co., 62 C. C. A., 417; Rosemon v. Carolina Cent. R. Co., 16 S. E., 766; 1 Elliott on Railroads, sec. 302; Wood on Railroads, sec. 164; Railway v. Cruse, 96 S. W., 821; Texas & P. Ry. Co. v. Overall, 82 Texas, 247; Price v. Railroad Co., 88 S. W., 577; Railroad Co. v. Carr, 47 Ill. App., 353; Fisher v. Railroad Co., 39 W. Va., 366; Malcom v. Railroad Co., 186 N. C., 63; Joske v. Irvine, 91 Texas, 574; Crawford v. Houston & T. C. Ry., 89 Texas, 89.

*Allen & Dohoney*, for appellees.—It was not error to instruct the jury that railroad companies are required to exercise such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent and competent persons under similar circumstances, and failure to exercise such care is negligence, and to apply said rule to the facts of this case. Railway Co. v. Halloren, 53 Texas, 53; Railway Co. v. Butcher, 83 Texas, 316; Railway Co. v. Welch, 86 Texas, 204.

It was not error to refuse to charge on contributory negligence. The court, in his main charge, requires the jury to find from the evidence that deceased was in such a state of intoxication as to be incapable of caring for himself, and tells the jury unless they so find to find for defendant. If deceased was in such a drunken condition as to be incapable of taking care of himself he was not chargeable with contributory negligence; if he was not in that condition plaintiffs were not entitled to recover and the jury was so instructed. Price v. St. Louis, I. M. & S. Ry. Co., 88 S. W., 578; Hutchinson on Carriers, sec. 666.

The rule of diligence in such cases is such care as a very cautious and prudent person would exercise under similar circumstances. Washington v. Railway Co., 90 Texas, 320; Railway Co. v. Suggs, 62 Texas, 326; Shiflett v. Railway Co., 18 Texas Civ. App., 57, 56 S. W., 699; Railway Co. v. Johnson, 55 S. W., 787; Shoemaker v.

Texas & P. Ry. Co., 29 Texas Civ. App., 578; Price v. Railway Co. (Ark.), 88 S. W., 576; 6 Cyc., page 599, note 70.

Deceased having been in such a state of intoxication as to render him incapable of appreciating the dangers ordinarily incident to railroad travel, and incapable of caring for himself and protecting himself against such dangers, appellant had a right to refuse to receive him as a passenger; but having so received him, the duty devolved upon its employes to use such a high degree of care to protect him as very cautious and prudent persons would have exercised under the same or similar circumstances.

The death of Robinson having been shown by the facts and circumstances in evidence to have occurred while he was in such a drunken condition and a passenger on appellant's train in charge of its employes who knew of his condition, the presumption arises from these facts and circumstances and the unusual character of the accident that it was caused by some negligence on the part of such employes, and appellant having failed to offer any evidence in explanation of the accident and relieve itself of the implication of negligence, the verdict of the jury should not be disturbed. Washington v. Railway Co., 90 Texas, 320; Railway Co. v. Suggs, 62 Texas, 323; Shiflett v. Railway Co., 18 Texas Civ. App., 57; Railway Co. v. Johnson, 55 S. W., 787; 3 Elliott on Ev., secs. 1967-1968.

WILLSON, CHIEF JUSTICE.—On November 21, 1905, W. I. Robinson, as a passenger on one of appellant's trains, was traveling from Paris to Hugo, I. T., distant from Paris about twenty-five miles. At or near Lenoir, a station on appellant's line of railway about ten miles from Paris, in some way not shown by the evidence, he was thrown or fell from the train on which he was traveling and killed—instantly, it appears. The suit was by appellees, his widow and children, to recover damages suffered by them on account of his death.

As grounds for the recovery sought appellees alleged in their petition that when Robinson got aboard appellant's train at Paris to go to Hugo he was "in such a state of intoxication as to be incapable of protecting himself against the dangers ordinarily incident to railroad travel;" that appellant, knowing his condition, permitted him to board its train and afterwards negligently failed to give him "proper care and attention, and permitted him to walk about the cars and out onto the platform while the train was in motion;" that while said train was running at a high rate of speed Robinson, "being too drunk to realize the danger, went out on the platform of the car; that said platform had no guard rail, gates or other protection, and that said Robinson was thrown, or fell, from said moving train." Specifically, the negligence relied upon was alleged as follows: "That the defendant, its agents and employes were negligent in receiving said Robinson as a passenger while so intoxicated, and in failing to properly care for and protect him, and prevent him from getting into a place of danger."

Appellant answered by a general denial, and specially, among other things, that Robinson was accompanied by a friend, who ap-

peared to be capable of and to be caring for him; and that without
its knowledge or consent he left his seat in and passed out of the
car and to the platform of same, while it was in motion, and either
fell or jumped from the car.

The circumstances preceding Robinson's death and furnishing the
only explanation thereof to be found in the record, were testified to
by one McClanahan, a witness for appellees. From his testimony
it appeared that he and the deceased had known each other about
ten years, and that on the evening before the accident occurred, by
chance had met at Grant, a station on appellant's line of road about
twenty miles from Paris. From Grant they traveled on the train
together that evening to Paris, reaching the latter place about 9
o'clock p. m. After securing a room at a hotel they seemed to have
wandered around the city, taking several drinks of whisky and beer
together, until about 11 o'clock p. m., when McClanahan went to
their hotel and to bed. Robinson, if he returned to the hotel during
the night, did not go to his room, but was there early the next morn-
ing. He was drunk and was talking and cursing very loud. A
short time after Robinson returned to his room he and McClanna-
han went to breakfast. They then again, for about an hour, wan-
dered around the city, taking "a few more drinks together" during
the time, after which they separated. Afterwards, at about 11
o'clock a. m., McClannahan went to appellant's depot in Paris to
take the train to Hugo. Within a short time after he reached the
depot Robinson came there. The train was late and did not leave
Paris until between 1 and 2 o'clock in the afternoon. We copy from
the statement of facts McClannahan's testimony on his direct exam-
ination as to what subsequently occurred:

"Robinson was drunk and staggering when he came to the depot,
and talking loud and acting in a manner to attract attention, and
did attract the attention of people around the depot. He gave me
the money to buy his ticket and asked me to get a ticket for him,
which I did. He gave me seventy-five cents, which was the price
of the ticket. He was so drunk that he could not talk distinctly,
but I could understand him. I offered him his ticket and he would
not take it—said he did not need any ticket. While we were waiting
for the train Robinson was acting in such a manner that I was
afraid he would get into trouble and get me into trouble, so I avoided
him. Saw him one time just before the train came in, going across
the street in the direction of a saloon. I next saw him after he got
on the train. When I got on the porter was standing at the steps
and asked me where I was going. When I got on I saw Robinson
on the platform six or eight feet from the porter; he was talking
and gesticulating. I could not hear what he was saying. He was
staggering around and swinging his arms in a wild manner. Rob-
inson came into the car in a few minutes, talking very loud, and
sat down with me. He was talking loud and cursing, and trying to
talk to other people on the car—asking them where they were going.
Some would talk to him and some would not. He did not sit long,
but got up, and was standing and holding to a seat when the con-
ductor came through taking up the tickets. I gave the conductor

his ticket. At that time Robinson was loud and boisterous, talking loud and cursing. The conductor took up the tickets this side of Hinkley, the first station out of Paris. Soon after the conductor passed through, Robinson went forward into the negro compartment of the car we were on. He did not walk steady—rocked as he walked. I heard loud talking and hallowing in the car he went into. He went forward between Hinkley and Lenoir, and I did not see him any more until I saw him dead. Soon after we crossed Red River the conductor came into the car where I was and said, 'We have gotten rid of that noisy fellow.' He asked me if I knew Robinson, and asked me his name. He told me that he was off the train. I wanted to go back and look for Robinson, and asked the conductor if he would stop and let me off at Grant. (We were then nearly to Grant.) He said no, he would not stop until he got to Hugo. The train was running twenty-five or thirty miles an hour, and did not stop or slow up between Paris and Hugo. When we got to Hugo the southbound train was there and about ready to leave. I got on that train and went back to Grant—got off there and walked back to Lenoir—looking for Robinson. I found his body at Lenoir, with his head cut off. The body had been picked up from the side of the track and laid on the platform."

McClannahan further testified that "at the time Robinson got on the train and until he was killed he was so drunk as to be incapable of taking care of himself." On his cross-examination he testified that he himself was "pretty full" when he got on the train, but that Robinson "was drunker than (I) was." Robinson, he stated, "was staggering, but not so much that he could not get around." And he added, "he did not talk sensibly." The cross-examination of McClannahan disclosed that in a statement in writing made by him to appellant's claim agent, after the accident and before the trial, he had asserted that at the time of the accident "Robinson had been drinking a little. He was not drunk. I considered that he was able to take care of himself." With reference to the statement made by him to the claim agent, on his cross-examination, he testified: "It is true in part, and part untrue. The part that states Robinson was not drunk is not true. He was drunker than I said he was in this statement."

The court instructed the jury as follows:

"If you believe from the evidence that on the day and date alleged in plaintiff's petition, at the time William I. Robinson, now deceased, was, or after he had been received as a passenger on defendant's train, was in such a state of intoxication as to render him incapable of caring for· and taking care of himself, and that the defendant, its agents and employes knew that he was so intoxicated, and if you further believe from the evidence that defendant, its agents and employes failed to exercise such a high degree of foresight as to possible dangers to said William I. Robinson during the time he was a passenger and intoxicated, if he was so intoxicated, or such a high degree of prudence in guarding against them as would be used by very cautious, prudent and competent persons

under similar circumstances, and that as a proximate cause of such failure, if any, the said William I. Robinson fell off said train and was killed, as alleged by plaintiffs, then you will find for the plaintiffs, and unless you so find you will find for defendant."

The appeal is from a judgment in favor of appellees for the sum of $13,200.

*After stating the case.*—We think appellant's fourteenth assignment of error, complaining of the action of the court below in refusing its request to instruct the jury to return a verdict in its favor, should be sustained.

As the trial court viewed the evidence, he must have thought it sufficient to support a verdict finding the deceased to have been so intoxicated as, within appellant's knowledge, to be incapable of caring for himself; to support a finding that appellant had no excusable reason to believe that McClannahan was attending to and caring for him; and, further, to support a finding that negligence on the part of the appellant was the proximate cause of his death. For the court refused to submit as issues in the case contributory negligence on the part of the deceased, and appellant's contention that it had a right to assume that he was being attended to and cared for on the trip by McClannahan, his companion. We do not think the evidence was sufficient to support such a view of the case.

We do not understand it to be the law that, as to every intoxicated passenger, a duty rests upon the carrier to resort to other and different means to provide for his safety than rests on it to provide for the safety of a sober passenger. It owes to each the high degree of care which a very prudent and cautious person under the same circumstances would exercise. Intoxication is of varying degrees. A person so under the influence of liquor as not to be entirely at himself is intoxicated, yet he may not betray it by either movement or word, and his condition may not be discernable by his intimate friends. It would hardly be contended that as to such a person the carrier must resort to other than the ordinary means for his safety. Again, a person may be "staggering drunk," and yet be capable of transacting with intelligence important business, and with great foresight providing under given circumstances for his own safety and comfort. In the absence of knowledge on the part of the carrier that he was in or about to get in the place of danger, it could not with reason be insisted that the carrier, in the exercise of the high degree of care it owed to such a person as a passenger, should provide a guard for him or resort to other extraordinary means to insure his safety. Such a person undoubtedly would be entitled to demand transportation as a passenger. The fact alone that he was drunk and staggering would furnish no excuse for refusing to receive him (Price v. St. Louis, I. M. & S. Ry. Co., 88 S. W., 575; Thixton v. Illinois Cent. Ry. Co., 96 S. W., 548; Milliman v. New York Cent. Ry. Co., 66 N. Y., 642; Strand v. Chicago & W. M. Ry. Co., 67 Mich., 380); especially so, we think, in view of our statute declaring it to be the duty of the carrier to receive and transport all persons offering themselves as passengers within a reasonable time previous to the time of the departure of its train, and

declaring a person refused such transportation to be entitled to re-
cover against the carrier "all damages which shall be sustained there-
by, with costs of suit." Sayles' Stat., arts. 4494, 4496. On the
other hand, a person plainly may be so intoxicated as mentally to
be incapable of appreciating dangers surrounding him and physically
incapable of avoiding them. His condition at once suggests irre-
sponsibility. The carrier might well be excused from receiving as
a passenger such a person unattended; but with as good reason, hav-
ing elected to so receive him, it should be held to owe to him the
duty to resort to such extraordinary means as might be necessary in
the exercise of the highest degree of care to secure his safety. Price
v. St. Louis, I. M. & S. Ry. Co., 88 S. W., 578. Between those
indicated by what we have said, may be other and varying degrees
of intoxication, producing greater or less mental incapacity and
greater or less physical incapacity. In every case presenting these
varying degrees its particular facts must be, as they must be in this
case, looked to in determining whether the duty rested upon the
carrier to receive the person as a passenger, and having received him,
to resort to extraordinary means to secure his safety. If, in this
case, the carrier might have refused to receive Robinson as a pas-
senger, it would have been because he was noisy and boisterous, and
not because he was either mentally or physically incapable of caring
for himself. As the fact that he was noisy and boisterous had noth-
ing to do with the misfortune which overtook him, that the carrier
for that reason might have refused to receive him as a passenger
should not be considered in determining its rights on this appeal.
That Robinson physically was not incapacitated from going to any
place he willed to go, we think is clearly shown by the evidence.
Though he may have accomplished it unsteadily and staggeringly,
without assistance, it seems from the record, he had gone from the
city to appellant's depot in Paris, had gotten aboard its train, made
his way to a seat thereon, and afterwards from his seat to another
compartment of the car. That mentally he was no less incapable of
caring for himself we think is equally apparent from the record. He
had knowledge enough to know when to go to appellant's depot to
take its train to his home at Hugo, and forethought enough to go
there at the right time to take that train. He had knowledge enough
to know the price of a ticket to his destination, and that he should
procure one before entering appellant's car, and he had forethought
enough to have his friend procure it for him. He knew when and
how to get aboard the train and where and how to secure a seat
thereupon. Indeed, so far as the evidence shows to the contrary, he
was not lacking any intelligence required to enable him to know
and appreciate the character of the business he had in hand and the
dangers incident to it, nor physical strength and control necessary
to enable him safely to transact it. In the absence of anything in
the evidence indicating a lack of such capacity, and exhibiting as he
did an apparent capacity to care for himself, we think the record
fails to show any reason why appellant should have acted towards him
otherwise than it did. While in the place it had provided for him
and which he of his own volition had selected, nothing had occurred

suggesting that he should be guarded or that other extraordinary precautions for his safety should be resorted to. While in that place he was in no danger, because he could not walk steadily and without staggering. So far as the record shows, nothing happened indicating to appellant's employes an intention on his part to leave the compartment of the cars in which he was traveling. Had it been made to appear that within the knowledge of appellant's servants or someone of them in charge of its train, he had left his seat and was making his way to the platform of the car, a different case would be presented. For it might well be said that, staggering and unsteady as he was in walking, it would have been dangerous for him to attempt to go out of the car and on to its platform, and that appellant's employes, in the discharge of the high degree of care appellant owed to him, should have prevented him from going to a place on the car fraught with danger to one in his condition; or if he were permitted to go there, should have taken such steps as their duty to him under such circumstances required should be taken to prevent him from injury. Fox v. Michigan Cent. Ry. Co., 68 L. R. A., 336; Wheeler v. Grand Trunk Ry. Co., 54 L. R. A., 955; Johnson v. Louisville & N. Ry. Co., 104 Ala., 241, 53 Am. St. Rep., 42. But not only does the record fail to show knowledge on the part of appellant's employes of deceased's intention to leave the compartment in which he had selected a seat; it affirmatively appeared that he was in the company of a companion capable, so far as the record shows to the contrary, and willing, it appeared, to render him assistance. That companion had purchased and taken care of the ticket entitling him to transportation on the train, and had acted for him in presenting it to the conductor. This, it seems to us, until something occurred indicating to the contrary, warranted appellant's conductor in assuming, had it occurred to him as likely deceased would need special care while on the train, that it would be given to him by McClannahan.

If, however, it appeared from the record that deceased was so drunk as to be incapable of caring for himself, and if it further appeared that appellant's conductor had no right to assume that his companion would so care for him as to insure his safety against conduct imprudent in one in his condition, we nevertheless would be of the opinion that the judgment should not be permitted to stand. For the record fails utterly to show how deceased got from the train and to his death. He may have jumped from the window or fallen from the platform. He may have been thrown by someone from a window or the platform. The doctrine of res ipsa loquitur does not apply. That doctrine has no application "unless the thing causing the accident is under the control of the defendant or his servants, and the accident is of a kind which does not ordinarily occur if due care has been exercised." 6 Thompson on Negligence, sec. 7635. Here the testimony fails to show what caused the accident. Until this primary fact was shown an inference of negligence from it, of course, could not be drawn. It devolved on appellees, by evidence competent for the purpose, to show negligence on appellant's part. No such evidence is in the record before us. It was contended in the argument that an inference of the existence of facts showing negligence might

be drawn from the failure of appellant to show by its conductor and trainmen the knowledge, if any, possessed by them of the occurrence. But this, we think, could not be done. Until facts showing prima facie a liability on its part had been proven, appellant was not called upon to offer evidence at all.

We do not understand that on another trial other evidence than that in the record might be obtainable and offered. We therefore see no reason for remanding the case. Hence, the judgment will be reversed and judgment will be here rendered in appellant's favor.

### ON MOTION FOR REHEARING.

It appearing from appellant's motion for rehearing that other evidence than that offered on the trial resulting in the judgment appealed from is obtainable, the motion is granted and the cause is remanded for a new trial.

*Reversed and remanded.*