## BOURGEOIS et ux. v. TOYE BROS. YELLOW CAB CO. et al.

### No. 17287.

Court of Appeal of Louisiana. Orleans.

Dec. 11, 1939.

Rehearing Denied Jan. 9, 1940.

Alfred Danziger, of New Orleans, for appellant.

M. C. Scharff, of New Orleans, for appellees.

WESTERFIELD, Judge.

This is a suit against Toye Bros. Yellow Cab Company, brought by Mr. and Mrs. Harry J. Bourgeois, claiming damages in the sum of $5,460.81, because of accidental injuries sustained by Mrs. Bourgeois, while a passenger in one of the taxicabs operated by the defendant company, alleged to be due to the negligent operation of the cab by its driver. Mr. Bourgeois claims $140.81 for medical expenses incurred by him as master of the community and Mrs. Bourgeois the remainder. The defendant denied all responsibility for the injuries alleged to have been sustained by Mrs. Bourgeois and consequent expenses occasioned her husband.

There was judgment below in favor of Mrs. Bourgeois in the sum of $2,500 and in favor of Mr. Bourgeois in the sum of $140.81. Defendant has appealed.

The case was vigorously and ably presented below. The transcript contains three hundred and forty-five pages of testimony, but only three eye-witnesses testified, the plaintiff and her daughter, Mrs. John J. O'Neil, who were occupants of the cab, and Thomas Braswell, the cab driver.

The accident, which was an unusual one, it is agreed was caused by the sudden stopping of the taxicab, plaintiffs contending that the stop was due to carelessness and want of skill on the part of the chauffeur, and the defendant that it was occasioned by a traffic exigency caused by the sudden movement of a parked car in darting across the path of the taxicab without warning. In the alternative, defendant pleads contributory negligence averring that the stopping of the taxicab, while sudden, because of the emergency referred to, was not of sufficient violence to cause a passenger in the normal possession of her faculties much discomfort, and that if Mrs. Bourgeois was injured to any appreciable extent, it was because of, or at least partially due to, her intoxicated condition.

It must be conceded that if the taxicab stopped, however suddenly, for the reason given by the defendant, that is to say, in order to prevent striking an automobile which, without warning and at a high rate of speed, darted across its path, there can be no recovery because in that situation the action of the chauffeur in stopping his cab probably prevented a very serious accident and, therefore, it was the proper and prudent thing to do.

The accident happened on Sunday night, March 28th, 1937, at about 9:20 p. m. when the taxicab was on St. Joseph Street near the intersection of that street with St. Charles Street, being about fifty feet from the intersection when, according to defendant, "a privately owned automobile, which was parked on the downtown side of St. Joseph Street and headed toward the river, without any signal, suddenly shot from the curbstone and careened across St. Joseph Street turning up St. Charles Street; that as a result of the violent and sudden movement of this automobile, directly in front of the oncoming cab, the driver was forced to quickly apply his brakes to avoid a collision". The only evidence of the presence of this "privately owned automobile" or of its having anything to do with the accident, is that given by Thomas Braswell, the chauffeur. At the time that the automobile is claimed to have crossed his path, Braswell testified that he was moving at the rate of eight miles per hour. The Honorable Wm. H. Byrnes, who tried this case below, was of opinion that the statement of Braswell was "pure fiction". He referred to it as "the ghost car". We quote the following from his reasons for judgment:

"In my opinion, his (Braswell's) story about the ghost car is pure fiction. I visited the scene of the accident on several occasions. I drove my car at approximately eight miles per hour. When I reached a distance of about fifty feet from the corner, I attempted to visualize a car near the downtown curb, facing the river, dash out in front of me and pass my car in front of it before I reached twenty-five feet from the corner of St. Charles Avenue. I have no hesitancy in saying that the facts as this witness stated concerning the ghost car are physically impossible. Again, in his testimony, he varies his statements at will to meet the exigencies created by any question. A fair example of what I mean will be found on pages 89 and 90 of the Transcript." (Braswell's testimony). Here follows detailed questions and answers referred to.

Both Mrs. Bourgeois and her daughter deny that there was any car whose sudden movement compelled Braswell to stop his car abruptly. Moreover, we find it difficult to understand how a car moving at eight miles per hour when stopped, however suddenly, could cause such violent disturbance to its passengers as to throw them from the seat to the floor of the cab as happened in this case to Mrs. Bourgeois and her daughter. It is also difficult to understand how an automobile parked against the curb on St. Joseph Street could have picked up sufficient speed to execute the maneuver in the manner claimed by Braswell. St. Joseph Street is shown to be forty feet wide. Braswell entered St. Joseph Street from Carondelet Street which intersects St. Joseph Street at right angles, Carondelet being one square away from St. Charles Street. It is said that the speed of the taxicab at no time exceeded fifteen miles per hour after leaving the corner of Howard Avenue and Carondelet Street, which is one city square above St. Joseph Street, because Braswell realized that the block between Howard Avenue and St. Joseph Street was a short one and, intending to make a right angle turn on St. Joseph Street, he had moderated his speed accordingly.

On the other hand, Mrs. Bourgeois and her daughter aver that the cab turned into St. Joseph Street at a rapid rate of speed, so much so, as to cause both passengers to lose their balance, and they contend that this immoderate speed was maintained until the sudden stop was made which caused them to be thrown from the seat to the floor of the cab. Braswell says that after the cab had stopped and he realized that something was wrong with the passengers, a police officer by the name of James M. Gagan, appeared on the scene and that Mrs. Bourgeois and her daughter in a conversation with the officer absolved him of all blame for the accident, saying that "whoever was driving that car (the car which is said by defendant to have created the emergency) should be put in jail". He also stated that Mrs. O'Neil immediately after the accident rebuked her mother in the following language: "Mama, I told you not to drink any more and you went and taken another drink after I

told you not to. Now this a pretty fix for me to take you home in." Officer Gagan corroborated the testimony of Braswell to a certain extent, stating that he smelled the odor of liquor in the cab and that the ladies had exonerated the driver from all censure. He also stated that the daughter, Mrs. O'Neil, had rebuked her mother because of her excessive drinking. Officer Gagan's testimony is, however, discredited because he claims to have gone to the scene of the accident pursuant to instructions from the First Precinct Station, when it appears from the records of that Station that no report of the accident had been received until nine fifty-five p. m., by which time Mrs. Bourgeois and the taxicab had left the scene of the accident, Mrs. Bourgeois having been conveyed to the Hotel Dieu in the taxicab which thereafter went about its business. There are other discrepancies in this officer's testimony commented upon by the learned trial judge in his reasons for judgment which we will not repeat here.

On the question of the negligence of the driver of the taxicab our conclusion is in the affirmative.

The other defense—that of contributory negligence—rests upon the allegation that Mrs. Bourgeois was intoxicated. We seriously doubt whether under the circumstances relied upon by the defendant to show contributory negligence due to the alleged intoxication of Mrs. Bourgeois, that that defense, even if sustained by the evidence, could be effective, for a public carrier of passengers, known to be intoxicated, owes a higher degree of care in the operation of its vehicles in order that they may not be injured in transit by reason of their temporary disability caused by the effects of alcohol. In this case defendant's driver contends that Mrs. Bourgeois was drunk when she entered his cab, so much so that she required the assistance of two other persons in order to get into the cab. Therefore, according to his own statement, he knew he was accepting for transportation in his cab a drunken person and must be charged with the consequent responsibility. In 10 American Jurisprudence, page 284 (footnote) it is stated:

"The rule of contributory negligence does not apply to an injury to a drunken passenger who falls from a train while staggering and dancing between the open doors of the baggage car, where, with knowledge on the part of the carrier of his inability to realize his danger and to care for himself, it makes no effort to protect him from injury. Wheeler v. Grand Trunk R. Co. 70 N.H. 607, 50 A. 103, 54 L.R.A. 955."

Be that as it may, however, the evidence falls far short of establishing the drunkenness of Mrs. Bourgeois. She had been to a Sunday dinner party—Easter Sunday. There were in attendance five women and one man, Mr. L. B. Crawley. Mr. Crawley ordered from Katz & Besthoff, a nearby drugstore, a gallon of claret wine, most of which was consumed by those present. However, Mrs. Bourgeois, according to her testimony, had only one "fancy glass" of the claret and according to the testimony of Crawley, his wife, Mrs. Crawley, Mrs. Gladys Ostoich, the hostess, and Mrs. O'Neil, plaintiff's daughter, Mrs. Bourgeois drank very little wine and was quite sober when she left the party. Moreover, claret which, according to the Court's understanding, is a light wine, is not very conducive to drunkenness. It is true, that Dr. Miller, the defendant's physician, testified that when he called upon Mrs. Bourgeois at the Hotel Dieu just after the accident, he noticed the odor of liquor upon her breath, but he stated that she was definitely not under the influence of alcohol. It may be that the odor of the particular kind of claret in which this party indulged remained upon the breath of those who imbibed it, for an unusual length of time. In any event, we are convinced that Mrs. Bourgeois was not drunk, consequently, the plea of contributory negligence must fail.

As to the quantum of damages, Mrs. Bourgeois was fifty-six years of age. She had a swelling over her eye caused by bumping her head against the forward portion of the taxicab when she fell off the seat, but we do not believe that she suffered any serious eye trouble. She says that she experienced a severe sacro-iliac sprain as a result of the accident and her physician, Dr. Jerome Landry, testified to that effect. She was also quite nervous, a condition at least partially occasioned by the accident. She operated a "Beauty Parlor" and lost several hundred dollars because of her disability. While she remained in the Hotel Dieu about two weeks and upon her return home was in bed for another two weeks, and thereafter used a rolling chair for a short while, her

confinement to the hospital and to her home was, in some respect, due to the apprehension that she had suffered a concussion of the brain which, as it subsequently appeared, was not the case. The amount claimed by the husband and recognized by the Court below is not in contest, but we believe the award to Mrs. Bourgeois is excessive and will reduce it to $1500.

For the reasons assigned the judgment appealed from is amended by reducing the amount awarded Mrs. Bourgeois from twenty-five hundred ($2,500) dollars to fifteen hundred ($1,500) dollars. In all other respects it is affirmed. Costs of appeal to be paid by appellee.

Amended and affirmed.

McCALEB and JANVIER, JJ., concur in the decree.