Mrs. Enid Pierce, while a passenger for hire in a cab of Toye Brothers Yellow Cab Company, sustained personal injuries when that cab came into collision with an automobile driven by Duke Coats at about 5 o'clock on the afternoon of June 2d 1939, at the corner of Laurel Street and Jefferson Avenue in New Orleans.
Seeking recovery for damages from the said partnership, Toye Brothers Yellow Cab Company and from the individual members thereof, Mrs. Pierce brought this suit, charging that the collision resulted from the negligence of L.W. Daussat, the operator of the cab, and asserting that at the time of said accident Daussat was acting within the scope of his employment by defendants. She prayed for judgment for $25,400.
Defendants admit that Mrs. Pierce was a passenger for hire but they deny that their employee was in any way at fault, and aver that the sole cause of the accident was the negligence of Coats, the operator of the other automobile.
There was judgment for plaintiff for $6,000, with interest and costs, and defendants have appealed.
The accident occurred within the intersection. At that point Jefferson Avenue is a very wide, paved thoroughfare, and has no neutral ground, and Laurel Street is much narrower, is also paved and crosses Jefferson Avenue at a right angle. The cab, on its way up Laurel Street, had stopped on the down-town lake corner just before reaching Jefferson Avenue, and from it another passenger, Mrs. Agnes Caldwell, had alighted. She lived on the river side of Laurel Street, and therefore walked across that street to reach her residence. The taxicab, with Mrs. Pierce as its sole remaining occupant, then started and entered the Jefferson Avenue intersection, it being the intention of the driver to cross that avenue and to proceed up Laurel Street. The Coats car was on its way down Laurel Street, and was being driven on the right-hand side of that street so that the two vehicles, had each maintained its course, would have safely passed each other just above the center of the intersection. However, Coats, the driver of the other car, without giving any warning of his intention, suddenly turned to the left in an effort to proceed out Jefferson Avenue towards the lake. This maneuver brought his car directly across the path of the on-coming taxicab and, before the chauffeur of the cab could bring it to a stop, the right side of the Coats car had struck the front of the cab and had caused it to come to a sudden stop, with the result that it sustained considerable damage to its front, to its right fender and bumper, and with the more important result that Mrs. Pierce sustained the rather serious injuries for which she seeks recovery.
It seems to be the theory of counsel for plaintiff that Daussat, the driver of the taxicab, was negligent in starting his cab at all, after Mrs. Caldwell had alighted from it, for the reason that at that time the Coats' car was speeding down Laurel Street; the argument being that it was a reckless thing for the cab driver to start up Laurel Street when the Coats car was *Page 564 
speeding in the opposite direction on the same street. It is also the theory of counsel for plaintiff that Daussat was at fault in that he started his cab at too high a rate of speed.
There is no doubt whatever that the Coats car was proceeding down Laurel Street at a very excessive rate of speed, and that Coats gave no warning whatever of his intention to turn, and that he turned suddenly and when it was too late for the cab to be brought to a stop.
There is not a word in the record which tends to contradict the statement of Daussat that Coats was operating his car "at an extremely high rate of speed" and that "he gave no signal" and it follows that Daussat is correct in his statement that "I had no way of knowing he was going to turn". Not one witness testified on behalf of plaintiff that Coats was not operating his car at a high speed, and many witnesses for defendant said that the speed of that vehicle was extremely high.
Mr. Landry, referring to the Coats car, said that when it made the turn it "was possibly going 20 to 25 miles an hour."
Mrs. Wachter said: "A man in a small car came speeding and tried to run in front of the cab", and she also said: "It was going fast, because he went a good distance after he hit the cab and didn't seem to be able to stop."
Mrs. Rose Ries "saw this black automobile coming fast." She also said: "I could not judge the speed, but it was going very fast, and I said to the lady (inside) `If that fellow don't look out he will kill someone' and I kept my eyes on that fellow and that automobile and I saw him crash into a yellow cab."
Mrs. Henry Arnouilh was sitting on her front porch a short distance above Jefferson Avenue when the Coats car passed, and she said to her husband: "That is a terrible rate of speed and if he would run into something it would be terrible."
Mr. Arnouilh, when asked what the speed of the Coats car was, said: "Well, pretty fast, and faster than any cars — any other cars passing there."
On the other hand, it seems certain that the yellow cab was proceeding at a very slow rate. Mrs. Caldwell, who had accompanied plaintiff in the cab and who had just stepped from it and had walked across Laurel Street to her home, said that the cab "had not started until I crossed over the street." Mrs. Wachter said that the "cab started off slowly." Landry estimated the speed of the cab at "not more than 10 or 15 miles per hour." There is in the entire record no testimony to the effect that the speed of the taxicab was high except that of Mrs. Pierce, herself, and all that she said was that the cab started "at a good rate of speed." She repeated these identical words three times in her testimony, but admitted that she knew very little, if anything, about the cause of the accident, her entire testimony as to the actual occurrence being that "The chauffeur started his cab at a good rate of speed and the next thing I knew I was at the bottom of the cab with my face all cut and my hands cut and my leg cut and I looked up to see what I had hit and I saw I had shattered the glass of the cab."
It is true as counsel for plaintiff point out that the testimony given by many of the witnesses for defendants, when Coats was on trial in the Criminal Court, differed in several particulars from that given by the same witnesses later in the trial of the present case, but we are unable to discern discrepancies of sufficient importance to justify the conclusion that any of those witnesses intentionally departed from the truth or colored their testimony. If we accept those versions of the testimony which are least favorable to defendants, still we do not find in this record nor in the Criminal Court record any evidence whatever which justifies the conclusion that the taxicab was going fast or that the Coats car was proceeding slowly. Nor do we find any evidence whatever which justifies the conclusion that there was anything about the operation of the Coats car which indicated that the driver intended to make the sudden turn to his left. It is true that where, in an accident such as this, the facts of which are obviously not within the knowledge of the passenger, a passenger is injured, the burden is on the carrier to prove itself free from fault.
In Gonzales v. Toye Bros. Yellow Cab Co., La.App., 198 So. 379, 381, we said: "It is also well established in our jurisprudence that, where a passenger is injured in an accident the cause of which the passenger can know nothing about, the burden is on the carrier to prove itself free from fault, and, where the cause is claimed to be a sudden emergency created entirely by some third person, the carrier *Page 565 
is under the necessity, if it would absolve itself from liability, of showing that neither it nor any of its employees was in any way involved in the creation of the emergency and also that the operators of the vehicle in which the passenger was riding did all that they could (even though it was not the best thing) to prevent the accident."
See, also, Cusimano v. New Orleans Public Service, Inc.,170 La. 95, 127 So. 376; Gaines v. Teche Lines, La.App., 176 So. 134; Gager v. Teche Transfer Co., La.App., 153 So. 69, and Jones v. Baton Rouge Electric Co., La.App., 192 So. 539. But it is also true that a carrier is not the insurer of the safety of a passenger and that by showing that there was no negligence on the part of the carrier's employee or on the part of the carrier, and that the equipment was not defective, the carrier may avoid liability. And here we think that the carrier made this showing and that the evidence proves beyond any possible doubt that the sole cause of the accident was the carelessness of Coats in driving his car at an excessive rate of speed down Laurel Street and in attempting to turn it suddenly into Jefferson Avenue when the approaching cab was so close as to make this maneuver impossible.
Counsel maintain that Doussat should not have started the cab when he saw the Coats car approaching at an excessive speed. They point to the following testimony of Doussat:
"Q. You saw this car coming in the next block? A. Yes, sir.
"Q. You were still stopped when you looked? A. Yes, sir.
* * * * *
"Q. How fast was that car going while you were parked? A. It was going too fast to make the turn.
"Q. You will swear he was speeding? A. Yes, and at an extremely fast rate of speed.
* * * * *
"Q. And you were sitting here and actually saw the car speeding? A. Yes.
"Q. What did you do? A. I started ahead."
They ask in their brief: "What better testimony and what more damaging testimony could be given against the Yellow Cab Company than this, by their chief and most binding witness?"
But they overlook the fact that Coats gave no evidence whatever of his intention to turn. While his speed was excessive, it obviously was not so great as to make it dangerous for other vehicles to be on the street at all, and there was no reason which could have prevented Daussat from proceeding up to the lake side of Laurel Street while Coats was proceeding down the river side, even though the speed of Coats' car was greater than it should have been.
The sole remaining question is whether or not the crash itself and the nature of the injuries indicate that Daussat was operating the cab at too high a rate of speed, and it is argued that his speed must have been great as otherwise Mrs. Pierce would not have been thrown against the glass partition back of the driver's seat. Our attention is directed to what we said in Bourgeois v. Toye Brothers Yellow Cab Co., La.App., 192 So. 379, 380: "* * * Moreover, we find it difficult to understand how a car moving at eight miles per hour when stopped, however suddenly, could cause such violent disturbance to its passengers as to throw them from the seat to the floor of the cab as happened in this case to Mrs. Bourgeois and her daughter. * * *"
Ordinarily, if a vehicle is proceeding slowly and is run into from the front by another vehicle going in the opposite direction, a passenger seated on the rear seat will not be catapulted toward the front unless the speed of the vehicle in which the passenger is riding is high, but in automobile accidents where one of the vehicles is going at an excessive speed and strikes the other, the mere fact that injuries are sustained to a certain part of the body or that a certain part of the vehicle is struck by the passenger is not sufficient to overcome the positive evidence that the vehicle in which the passenger was riding was not going at an excessive speed, and in order to permit recovery in this case it would be necessary for us to hold that the physical fact that Mrs. Pierce's head struck the glass partition is sufficient in itself to overcome the positive testimony of many witnesses who said that the cab was proceeding slowly.
The record which is before us indicates beyond any possible doubt that Daussat was not at fault and, we hold that the sole cause of the accident was the carelessness of Coats. *Page 566 
The judgment appealed from is annulled, avoided and reversed, and plaintiff's suit is dismissed at her cost.
Reversed.