## CALLAWAY v. HART.

No. 10913.

Circuit Court of Appeals, Fifth Circuit.

Nov. 18, 1944.

Rehearing Denied Dec. 26, 1944.

Writ of Certiorari Denied April 2, 1945.

See 65 S.Ct. 915.

W. H. Sadler, of Birmingham, Ala., for appellant.

William Conway and Clifford Emond, both of Birmingham, Ala., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

Ellis C. Hart filed this suit in the Circuit Court of Jefferson County, Alabama, for damages for personal injuries sustained by him, allegedly due to the negligence of the carrier, while he was en route as a passenger upon appellant's train from Birmingham, Alabama, to Dadeville, Alabama. The case was removed to the United States District Court, and there an answer was filed by appellant in which he admitted that the plaintiff was a passenger of the appellant; that plaintiff received certain personal injuries; and that the plaintiff received such injuries by falling or stepping from the train while it was in rapid motion. Appellant denied that he or his employees were guilty of any negligence, and also pleaded contributory negligence or assumption of risk on the part of plaintiff in that:

1. While in an intoxicated condition he voluntarily opened an outside door of the passenger coach and stepped from the train while it was in rapid motion; and,

2. While in an intoxicated condition he voluntarily and unnecessarily assumed a dangerous position on said coach by standing in an open door while the train was in rapid motion, knowing that he would likely or probably be injured; and that such negligence proximately contributed to the injuries complained of.

At the conclusion of the testimony, appellant moved for a directed verdict. The motion was overruled. Thereupon, appellant requested the court in writing to give a special charge dealing with defendant's alleged duty to prevent the plaintiff from moving about in the coach. The request was denied. A verdict for the plaintiff in the amount of $7,000 was returned by the jury, and from a judgment in accordance with the verdict, this appeal is prosecuted.

In this court, appellant contends that the court erred in overruling defendant's motion for a directed verdict, and in refusing

defendant's requested charges reading as follows:

"If you believe the evidence, you must find for the defendant," and

"If you believe the evidence, you cannot award plaintiff any damages as for any failure of the trainmen to confine plaintiff or to otherwise prevent him from moving about in the coach."

The plaintiff boarded the train, operated by the appellant, at Birmingham, Alabama, about 4:30 P. M., on July 3, 1942, en route to Dadeville, Alabama. The train consisted of five cars, three of which were for mail and express; the fourth was a combination baggage and passenger car; and the fifth was an ordinary passenger car. The combination car was divided by a partition; the front part was used for baggage, and the rear part for colored passengers. The passenger car was used for white passengers only, and in its rear a space was partitioned-off for use as a smoking compartment. The passenger cars were known as vestibule cars; they had platforms at each end, which, while the train was in motion, were enclosed by trap doors over the steps with doors at the sides. The toilet for ladies was in the front part of the passenger coach, and the toilet for men was adjoining and immediately to the rear of the smoking compartment.

According to plaintiff's testimony, he boarded the train at Birmingham, Alabama, having in his possession three pints of whiskey. He took a seat in the smoking compartment and took one drink about the time the train left the station. This, he said, was the only drink he had had. When some twelve or fourteen miles from Birmingham, he left the smoking compartment and went up to the front end of the coach to the toilet, but he could not get in as the door was locked. After waiting a few moments, he attempted to go through to the toilet in the coach ahead, and as he stepped from the coach door onto the vestibule the train gave a lurch or jerk, throwing him out of the door and off the train. He does not remember anything that occurred for several days thereafter, and the evidence shows that during that time he was in a hospital and under the influence of drugs.

Defendant introduced some eight witnesses, among them three lady passengers, and the conductor and flagman from the train crew. Two of the lady passengers testified that they observed the plaintiff immediately before he boarded the train, and that he was very much intoxicated; that in asking them a question he walked so close that they had to step back out of his way.

The conductor testified that he observed the plaintiff when he boarded the train, that he was under the influence of liquor at that time. He further stated that the plaintiff, upon boarding the train, went into the colored coach and lay down "in the seat with his feet out the window, with colored passengers all around him"; that he ordered the plaintiff to move out of that coach, as it was a colored coach, and the plaintiff then went into the white passenger coach. The conductor testified that as he was taking up the tickets, the plaintiff attempted "to get through the aisle" of the passenger car; that he was drunk or intoxicated and "was having to hold to the seats to get through the aisle." He further testified that in going through the coaches some two or three miles from where the accident happened, he saw the plaintiff standing out in the vestibule of the coach. The conductor did not ask the plaintiff to move from that position, nor did he make any effort to get the plaintiff from the vestibule into the car.

The flagman testified that when he saw the plaintiff he was in the smoker, lying down on a seat; that later he saw plaintiff at the front end of the car and talked with him; that plaintiff at that time was "drinking rather heavily and in a way looked like he was drunk and staggering." The flagman said that he inquired of the plaintiff what he was after and plaintiff replied that he was looking for water. The flagman showed him the water cooler "right there at him."

There was evidence that after the departure of the train from Birmingham plaintiff took one or more drinks in the smoker of the white coach, and, with one or two passengers, drank one of his three pints of liquor.

The three lady passengers who testified observed the plaintiff coming up the aisle of the coach just prior to the accident and stated that he, at the time, appeared to be under the influence of liquor and drunk; that, on reaching the door at the head of the coach, he had considerable trouble finding the knob of the door. It was at that time that the flagman came through and had his conversation with the plaintiff. All of the ladies testified that shortly after the

flagman passed through, the plaintiff "went through the door the trainman had opened"; and two of them, a mother and daughter who were sitting together, said that after passing through the door to the vestibule platform, plaintiff turned to the right; then in a few minutes they saw him cross from the right to the left of the vestibule. Almost immediately thereafter two of the ladies saw him falling from the left side of the train.

There was sharp conflict in the testimony of the flagman and the conductor as to who closed the vestibule doors to the passenger cars; each claimed that it was his duty to close the vestibule doors and that he complied with said duty on leaving Birmingham. It is in evidence that the flagman, shortly before the accident, had opened the vestibule door on the left side of the train to pick up a train order. The message was picked up about three miles from the point where the plaintiff fell from the train.

■■■ It is conceded that this case is governed by the laws of the State of Alabama. Under Alabama law:

1. A common carrier is charged with the duty of exercising the highest degree of care, skill, and diligence in the transportation of passengers, and is held responsible for the consequences of the slightest negligence resulting in injury to persons sustaining that relation to it.[1]

2. A common carrier which takes upon its train a passenger who is intoxicated and who is not able to look out for his own safety, when it knows, or in the exercise of reasonable care should know, his condition, is bound to exercise a degree of care for his protection commensurate with his inability to guard himself from danger.[2]

3. A common carrier is not bound to furnish vestibule coaches, but having done so, it is its duty to keep the doors of the vestibule closed between stations and it will be liable for injuries to passengers for negligently allowing the doors to remain open.[3]

4. A passenger attempting to pass from one coach to another through the vestibule is not guilty of contributory negligence. Modern cars are so constructed as to make convenient and invite passage from car to car.[4]

5. Drunkenness is no excuse for wrongful conduct. The carrier is not bound to ascertain the condition of its passengers in that regard; nor required to have any special skill in foreshadowing the actions of intoxicated persons; nor will they be considered to be at fault in failing to give them special care unless their condition, known to the trainmen, renders them incapable of caring for themselves against the particular thing which causes the injury.[5]

■■■ There can be no doubt that the plaintiff, to the knowledge of the conductor, was perceptibly intoxicated when he boarded appellant's train; the conductor so states. His intoxicated condition was further brought home to the conductor by his action in going into the negro coach and lying down on the seat among the negro pas-

---

[1] Alabama G. S. R. Co. v. Hill, 93 Ala. 514, 520, 9 So. 722, 30 Am.St.Rep. 65; Birmingham Ry., L. & P. Co. v. Bynum, 139 Ala. 389, 36 So. 736.

[2] Williams v. Louisville & N. R. Co., 150 Ala. 324, 43 So. 576, 10 L.R.A.,N.S., 413; Central of Georgia Ry. Co. v. Carleton, 163 Ala. 62, 51 So. 27; Bourgeois v. Toye Bros. Yellow Cab Co., La.App., 192 So. 379; Donovan v. Greenfield & T. F. St. Ry. Co., 1 Cir., 183 F. 526; Winfrey v. Missouri, K. & T. Ry. Co., 8 Cir., 194 F. 808; Jameitis v. Wilkes-Barre Ry. Co., 277 Pa. 437, 121 A. 317; Dokus v. Palmer, 130 Conn. 247, 33 A.2d 315; 10 American Jurisprudence 284, N 11; 2 Moore, Carriers, 2d Ed. p. 1195; 2 Hutchinson on Carriers (3d Ed.) 992.

[3] Clanton v. Southern Ry. Co., 165 Ala. 485, 51 So. 616, 27 L.R.A.,N.S., 253; Carter v. Kurn, 8 Cir., 127 F.2d 415; Minneapolis St. P. & S. S. Ry. v. Galvin, 6

Cir., 54 F.2d 202; Great Northern Ry. Co. v. Shellenbarger, 9 Cir., 54 F.2d 606; Holle v. Delaware, L. & W. R. Co., 122 N. J. L. 358, 5 A.2d 874; Daly v. Pryor, 197 Mo.App. 583, 198 S.W. 91.

[4] Clanton v. Southern Ry. Co., 165 Ala. 485, 51 So. 616, 27 L.R.A.,N.S., 253; Carter v. Kurn, 8 Cir., 127 F.2d 415; Galveston, H. & S. A. Ry. Co. v. Patillo, 45 Tex.Civ.App. 572, 101 S.W. 492.

[5] Columbus & W. R. Co. v. Wood, 86 Ala. 164, 5 So. 463; Johnson v. L. & N. R. Co., 104 Ala. 241, 16 So. 75, 53 Am. St.Rep. 39; L. & N. R. Co. v. Johnson, 108 Ala. 62, 19 So. 51, 31 L.R.A. 372; Williams v. Louisville & N. R. Co., 150 Ala. 324, 43 So. 576, 10 L.R.A.,N.S., 413; Central of Georgia Ry. Co. v. Carleton, 163 Ala. 62, 51 So. 27; Gates v. Bisso Ferry Co., La.App., 172 So. 829; Central of Georgia R. Co. v. Carlisle, 2 Ala. App. 514, 56 So. 737.

sengers. This occurred before the train left Birmingham.[6] A carrier is not required to accept an intoxicated passenger, but when a carrier, having knowledge of a person's intoxication, accepts him as a passenger, then the carrier is bound to exercise greater care with respect to him than if he were sober.[7]

■■■ Whether the plaintiff at the time he boarded appellant's train at Birmingham was drunk to a point where he was incapable of taking care of himself and whether such fact was or should have been known to the carrier's employees are jury questions.[8] Whether the vestibule doors were closed by the carrier while the train was in motion and whether the plaintiff was guilty of contributory negligence are likewise jury questions. In passing upon these questions, it was the province of the jury to take into consideration plaintiff's condition upon boarding the train; the fact that he lay down on the seat in the negro coach among the negro passengers; that he left the smoker adjoining which a toilet for men was located and went up to the front end of the coach to use the ladies' toilet; that he had to hold to the seats to get through the aisle, and had difficulty on reaching the door of the coach in finding the door knob. These were matters to be weighed by the jury in determining plaintiff's condition and appellant's knowledge thereof, and whether plaintiff was guilty of contributory negligence.

■■■ The conflict in the testimony of the conductor and the flagman, who each claimed that he closed the vestibule doors to the coaches upon leaving Birmingham, and the evidence that the flagman opened the vestibule door on the left side of the train to receive a dispatch shortly before the arrival of the train at the place where the accident occurred, were matters to be considered by the jury in determining whether the vestibule doors were closed

while the train was in motion. It was also the province of the jury to say whether or not the appellant exercised the care toward plaintiff that his condition required, and whether the appellant was negligent in permitting the plaintiff to remain on the vestibule platform when found there by the conductor a few minutes before the accident occurred.[9] It takes little thought to conclude that if the conductor, knowing plaintiff's condition, had requested him to go back into the coach, there would have been no accident; but the conductor said and did nothing. Omission of duty is negligence.

We cannot say as a matter of law that the testimony exonerated the appellant of negligence towards the plaintiff. Nor can we say, as a matter of law, that under the evidence the plaintiff was guilty of contributory negligence. These were jury questions. We think, therefore, that the court below was correct in overruling appellant's motion for a directed verdict and that appellant's requested charges were likewise properly refused.

The judgment appealed from is affirmed.

SIBLEY, Circuit Judge (dissenting).

No evidence, I think, authorizes the verdict. The law of Alabama requires of the carrier the highest care for the safety of the passenger, but there is no presumption of negligence. The burden is on the plaintiff to show how he got hurt and that it was due to some fault of the carrier. He presents only his own testimony, and he alone knows how it happened. He swears he had drunk nothing before boarding the train and took only one drink afterwards, and was not intoxicated; that he went to the forward end of the coach to the toilet, found it occupied, stood for three or four minutes in the open door of the coach, observed the outer door of the vestibule open on his right, decided to walk past it to the

[6] That appellant had knowledge of plaintiff's condition is shown by his answer wherein he alleges, "the defendant further says that on the occasion complained of the plaintiff was in a highly intoxicated condition, and that he voluntarily opened an outside door of said coach and stepped from the coach under the mistaken belief that he was entering a toilet, and so proximately contributed to the injury complained of." This allegation certainly implies that appellant knew that plaintiff was intoxicated to a point where he did not know what he was doing.

[7] Donovan v. Greenfield & T. F. St. Ry. Co., 1 Cir., 183 F. 526.

[8] Louisville & N. R. R. Co. v. Johnson, 108 Ala. 62, 19 So. 51, page 54, 31 L.R.A. 372; Johnson v. L. & N. R. R. Co., 104 Ala. 241, 16 So. 75, page 77, 53 Am.St.Rep. 39; Williams v. L. & N. R. R. Co., 150 Ala. 324, 43 So. 576, 10 L. R.A.,N.S., 413.

[9] Carter v. Kurn, 8 Cir., 127 F.2d 415.

toilet in the coach ahead, that the train made a jerk, and he fell through the open door. He does not say the jerk was unusual, and other passengers say there was no unusual motion of the train. Contributory negligence bars a recovery in Alabama. Voluntary intoxication is no excuse for a want of care on the plaintiff's part. One voluntarily intoxicated, but able to will and to act, is held to the same standard of care as a sober person of ordinary prudence. Johnson v. L. & N. R. R. Co., 104 Ala. 241, 16 So. 75, 53 Am.St.Rep. 39; Louisville & N. R. R. Co. v. Johnson, 108 Ala. 62, 19 So. 51, 54, 31 L.R.A. 372; Columbus & W. R. R. Co. v. Wood, 86 Ala. 164, 5 So. 463. The trial judge in effect charged the jury that if the plaintiff, knowing the door was open, tried to walk past it with the train in rapid motion, he could not recover. It is not contended now that he could. The contention now is that the plaintiff was so much intoxicated that he did not know his situation or his acts, and his account of what happened ought to be disregarded, and reliance is put on the duty of the carrier to specially look after so drunk a passenger to keep him out of danger even from his own acts. There is no contention that anything was wrong with the equipment, or the handling of the train. The theory of liability is that the conductor, passing the man in the vestibule five minutes before the accident, should have brought him back into the coach. But the vestibule was a perfectly safe place, with the doors all shut, as everyone testifies they were, except the plaintiff; and he has a door open on the right of the train through which he could not have fallen, because two passengers saw him disappear from the left side of the vestibule and immediately afterwards roll down the bank on the left side of the track where he was found helpless soon afterwards by a searching party. Both the conductor and the flagman testify positively that the vestibule doors were all closed by them, (probably one or more by each), as the train left Birmingham, and that the train had not stopped nor the doors been opened since, except that at the very rear end of the train, which was the flagman's post of duty, he had opened a door to receive a train order, and closed it again. This was not the vestibule from which plaintiff disappeared. According to the evidence the plaintiff must have opened a lefthand door himself, and thus fallen out.

He was not so drunk as to require or even justify the conductor in taking charge of him. Rejecting the plaintiff's own testimony as to his complete sobriety, we find him buying his own ticket, enquiring which of ten tracks his train would be on and finding the train, showing his ticket to the conductor and mounting the car unassisted. He entered the colored car, and it being a hot July afternoon lay down and stuck his feet in the open window. The conductor told him he must get out of the colored car, and he did without argument, and went to the smoking compartment of the next coach. He unwrapped his liquor and shared some of it with several other passengers. He wrapped it back up, and went the length of the coach to get some water and got it, according to the flagman; to enter a toilet, according to himself, not noticing the word "Ladies" on the door. He was not loud or offensive, he neither said nor did anything to anyone, was moving under his own power, knowing what he wanted to do and where he wanted to go. The vestibule of a train with the doors closed is regarded as a safe place to be. I see nothing to require the conductor to interfere with him.

If the verdict is supposed to rest, not on the case the plaintiff claimed and testified to, but on a theory that the plaintiff was irresponsible and likely to hurt himself, so that the conductor should have taken charge of him, it emphasizes the error of the judge in refusing to give the requested charge numbered 3: "The evidence does not disclose a case making it the duty of the trainmen to confine or watch the plaintiff against the possibility that he would open the vestibule door and step out". This voluntarily intoxicated passenger is not entitled to a recovery against the railroad company for the injury caused by his own acts.