**RED TOP CAB & BAGGAGE CO. et al.**
**v. MASILOTTI et al.**

No. 13337.

United States Court of Appeals,
Fifth Circuit.

July 13, 1951.

Rehearing Denied Aug. 29, 1951.

S. J. Powers, Jr., T. J. Blackwell, Miami, Fla., for appellant.

Wm. Clinton Green, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The appellants are the owners and operators of taxicabs as common carriers. The four appellees, Hugo Masilotti, Rudolph Ciancaglini, Sharon Sirt, and Jeanette Miles, were passengers in a taxicab of appellants being driven by one Cochran, and were injured when the taxicab collided with an automobile driven by one John K. Jones. Each appellee brought a separate action against appellants and Jones to recover damages for their injuries, alleged to have been caused by the concurring negligence of Cochran, the taxicab driver, and Jones. The actions, identical in substance, were consolidated for trial. The jury trying the cases, as thus consolidated, returned verdicts in favor of each of the appellees against the alleged joint tort feasors, the Red Top Cab & Baggage Company and Royal Palm Transfer Company, the appellants, and John K. Jones. The named corporate defendants are the appellants here, and urge as grounds for reversal that the Court erred in sustaining a motion to strike their sixth defense; in refusing to adjudge that the evidence was insufficient to support a recovery against them, as urged, both upon the trial by motion for judgment, and afterwards, by motion for judgment notwithstanding the verdict; and in the giving of specified charges to the jury.

The record is voluminous and the testimony is conflicting as to the immediate circumstances of the collision. On September 19, 1946, between 1:30 and 2:00 o'clock, A. M., the appellees, who had been passengers on an airplane from Cuba, entered the taxicab at the Miami International Airport, as paying passengers. The taxicab departed from the airport with its passengers and proceeded in an easterly direction on Northwest 36th Street. It had traveled only a few blocks when it collided apparently "head on" with the automobile being driven by Jones, which was proceeding in a westerly direction. There was evidence on behalf of the plaintiffs, which the jury was authorized to credit, to the effect that one of the appellees was considerably airsick following the flight, and was "nauseous". The other passengers were solicitous of her condition and were discussing possible remedies. The driver of the cab joined in the discussion, suggesting black coffee, and in his conversation turned his head to speak to one of the passengers, while traveling at a speed of 40 to 45 miles per hour, and "not looking toward the road," at the same time, the car driven by Jones was approaching, blinking his lights off and on in front of the taxicab, and approximately 75 feet from it. At least one of the passengers yelled, (and probably another made outcry), "Look out, we are going to have a collision". Up to that point, the driver had his head turned and was not looking toward the approaching car. The cab did not swerve or slacken

speed and the collision occurred about the middle of the highway.

Jones testified that as his car approached within approximately 200 feet of the taxicab he noticed the very bright lights of the cab and proceeded to dim the lights on his car. He did this three or four times, but the cab did not dim its lights. Other passengers in the Jones car testified that the lights of the taxicab were on "high beam" and that the beam was not at any time depressed. When Jones was within 75 to 100 feet he switched his lights on and off about two times to attract the attention of the approaching cab. He could not say which side of the highway he was on at the time of the collision because he was blinded by the lights of the taxicab. At the time of the impact he had slowed his speed from 25 miles per hour to about 15.

The taxicab driver testified that he had driven approximately four blocks from the 36th Street Airport when he saw Jones' car, without any lights on, whip out from behind some other cars and come over on the left hand side of the road. At the time, he was driving the cab on the extreme south side of 36th Street at a speed of approximately 30 miles per hour, his headlights were on the low or dimmer beam, and his attention had not been diverted by the conversation of the passengers. He first saw Jones' car when it was 70 to 100 feet from him and driving directly toward the cab. He then pulled the cab to the left about 4 or 5 feet and reduced his speed to about 10 miles per hour in an attempt to avoid the collision, but before he was out of a position of danger the two automobiles collided head on.

Of the several witnesses who testified as to where the collision took place, with reference to the center of the road, the majority placed it at, or near, the center, although others placed it further to the south side of the highway.

■■ We conclude, upon consideration of all the evidence, that the rulings of the Court, which enforced its determination that the evidence favorable to the contentions of the plaintiffs was sufficient, if credited by the jury, to legally authorize recoveries by the plaintiffs, were not erroneous. The conflict between the testimony of the cab driver as to the attention he was giving to, and care he was exercising in, the operation of his vehicle, and that of the passengers, which indicated that he was not properly directing his attention to the operation of the vehicle, but was looking away from the street at the time of the collision, and other conflicts in the testimony, were questions properly to be determined by the jury. Likewise was it for the jury, upon consideration of all the testimony, to determine whether the negligence of Jones was so great and became apparent so suddenly that it created an emergency which the taxicab driver could not, by the exercise of due diligence, avoid. The same is true as to whether the lights of the taxicab were, on approaching the other car, illegally on "high beam", or on "low beam", as required, and as to the disputed matter of the speed at which the taxicab was being operated, and its location upon the highway. All these, and others appearing in the record, were disputed factual questions properly subject to be answered by the jury. The answer thus made, that the drivers of both cars were negligent, implicit in the jury's award against each of the alleged joint tort feasors, finds ample support in the record and any re-trial of the fact issue here is precluded.[1] The appellants could not escape liability by proof that the negligence of the taxicab driver, if any, was of small degree when compared to that of the driver of the other automobile involved in the collision. Plaintiffs' actions proceeded against both drivers as joint tort feasors whose negligence combined and concurred to cause the collision.

1. Tri-State Transit Co. of Louisiana v. Grier, 5 Cir., 127 F.2d 719; American Employers' Ins. Co. v. McLean, 5 Cir., 127 F.2d 275; Cf. Atlantic Greyhound Corp. v. Crowe, 5 Cir., 177 F.2d 635; Trinidad Asphalt Mfg. Co. v. McIntosh, 5 Cir., 100 F.2d 310; and cases cited; Louisville & N. R. R. Co. v. Norton, 75 Fla. 597, 78 So. 982.

Consequently, if the collision resulted from the concurring negligence, either party is liable to the plaintiffs to the same extent as though the injuries had been caused by his negligence alone.[2] Although the injury would not have occurred from the negligence of either alone,[3] where the negligence of two or more persons occurs to produce injury to a third person, the liability of the negligent person is both joint and several, however separate the acts of negligence may be, and the injured innocent party may sue one or all, and if a defendant is guilty of any negligence contributing to the proximate cause of the injury, he is liable.[4]

 We do not sustain the contention of the appellants that the instruction of the Court to the jury defining and applying the degree of care which the taxicab company, a common carrier, owed to its passengers[5] was tantamount to declaring the carrier to be an insurer of the safety of its passengers, or "owed them a degree of care so high as to be tantamount to a guarantee of safe carriage". While the Florida law does not treat a common carrier as an absolute insurer of its passengers,[6] such carrier is required to exercise the highest degree of care, foresight, prudence and diligence reasonably demanded at any given time by the conditions or circumstances then affecting its passengers and the carrier during the contract of carriage.[7] Failure to exercise the highest degree of care in such an instance is slight negligence,[8] for which the carrier is held responsible.[9] The instruction of the trial Court is in accord with the Florida jurisprudence.

 The Court did not err in instructing the jury to the. effect that in determining the question of negligence they could consider the applicable law and regulations governing the speed of motor vehicles, and if they found that the vehicle was operated in excess of the legal limit it would be *prima facie* evidence of reckless driving on the part of either or both of the drivers of the vehicles in question, and if violations of the statute "contributed in whole or in part proximately to the injuries of the passengers in the taxicab, then you may find for the plaintiffs against either the corporate defendants or the individual defendants or both as you believe the evidence to justify". Nor was it error to instruct the jury in a similar manner with reference to the alleged violation of the statute which required the use of the lower, or passing beam of multi-beam headlights on approaching within 500 feet of an on-

2. H. E. Wolfe Construction Co., Inc. v. Ellison, 127 Fla. 808, 174 So. 594, 605; Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 194 So. 353, 359.

3. Seaboard Air Line R. Co. v. Watson, 94 Fla. 571, 582, 113 So. 716.

4. Nichols v. Rothkopf, 135 Fla. 749, 185 So. 725.

5. "You are further instructed that where the plaintiffs entered the taxicab then being operated by the Red Top Cab & Baggage Co. in the course of its taxicab business by its employee under an implied agreement to pay fare for transportation as fare paying passengers, then there arises between the taxicab company and its passengers an implied contract on the part of the taxicab company to safely transport its passengers to their destination without injury, and in the performance of this duty the taxicab company owes to its passengers the highest degree of care vigilance, and foresight reasonably demanded at any given time by the conditions and circumstances of the transportation of such passengers, and if the said taxicab company was guilty of any negligence, however slight, which directly, either causes or contributes in any way proximately to the cause of the collision of the vehicles and the resulting alleged injuries to its passengers, by any negligence in the operation or control of said taxicab on the part of its employee, then the passengers in the taxicab have a right to maintain an action and to recover for breach of the contract entered into between the taxicab company and the passengers to safely transport them to their destination without injury."

6. Florida Railway Co. v. Dorsey, 59 Fla. 260, 266, 52 So. 963.

7. Swilley v. Economy Cab Company of Jacksonville, Fla., 46 So.2d 173, 177.

8. City of Sebring v. Avant, 95 Fla. 960, 962, 117 So. 383.

9. Callaway v. Hart, 5 Cir., 146 F.2d 103.

coming vehicle. The Court was careful to instruct the jury that the violation of the statute "in itself does not necessarily imply negligence", but, "if it is negligence under all the circumstances which is a proximate cause or one of the proximate causes of the injuries claimed [the violation] may constitute the basis for a finding of negligence and will sustain an award to the plaintiffs."

■ By their fifth defense, the appellants averred that the plaintiffs and the defendant Jones had, since the time of the collision, combined to present a false and fraudulent claim against them, as represented by the suit. This defense was stricken by the trial Court "without prejudice to the rights of defendant to introduce any proper evidence tending to affect the credibility of any witness." It well may be doubted that this so-called defense was legally any defense to the charge of negligence against the corporate defendants. It was substantially an assertion that the defendants possessed, or expected to produce, evidence to impeach the plaintiffs' testimony by placing upon the plaintiffs and defendant Jones the stigma of combining and conspiring to prosecute the "non meritorious claim" under the guise of having Jones appear as a defendant. But however this may be, any possible effect of the defense being so directly related to the question of impeachment and credibility, which approach was expressly made available and left open to the defendant, we think the absence of even any attempt to produce such evidence or to urge circumstances is significant. We, therefore, can not perceive that the ruling of the Court was in any wise prejudicial to the substantial rights of the appellants.

. [8] Under the circumstances of this case, as appears from the foregoing discussion, we find no error in the action of the Court withdrawing from the consideration of the jury the pleaded defense that the taxicab passengers were barred from recovery by reason of their contributory negligence. There was likewise no error in the ruling refusing the proffer of testimony by an investigating police officer as to statements made by parties at the scene of the accident. The Court properly held these to be no part of the *res gestae* or otherwise binding upon the parties.

We find no reversible error in the record and the judgments of the trial Court are affirmed.